COMMONWEALTH *vs.* EZRA S. GOODWIN & another.

Suffolk. Nov. 27, 1876. — Jan. 3, 1877. ENDICOTT, DEVENS & LORD, JJ., absent.

An indictment on the Gen. Sts. *c.* 160, § 28, for verbally threatening to accuse another of the crime of burning an insured building belonging to him, to the injury of the insurer, with intent thereby to extort money, sufficiently shows that an accusation of crime was threatened, and need not set forth the words of the threat, nor their substance, nor the situation and description of the building, nor the amount for which it was insured, nor the name of the insurer.

An allegation in a count of an indictment against an accessory, that he incited his principal to the crime charged on the "said day of December," is made sufficiently certain as to time by reference to the day of that month last before named.

On the trial of an indictment for threatening to accuse another of the crime of burning a building with intent to injure the insurer, it is not necessary to produce the written contract of insurance, if other evidence, tending to show that the building was insured, is admitted without objection.

On the trial of an indictment against an accessory for inciting his principal to threaten another with a crime with intent thereby to extort money from him, evidence that he was intimate with his principal, that he stopped in his house without going out, except at the time the threats were made, and that he was then present, that an affidavit furnished by him to be used therewith was false, with other like conduct and circumstances, is sufficient to justify the inference that he knew that money was to be extorted by threats, and that he aided therein.

At the trial of an indictment for threatening to accuse another of the crime of burning an insured building of his, with intent to injure the insurer, the proof was of an accusation that the person accused hired a third person to burn the building *Held*, that there was no variance.

At the trial of an indictment for threatening to accuse another of a crime with intent to extort money thereby, there was evidence that the defendant said "I will prosecute you," or "I will have you prosecuted." The presiding judge instructed the jury that it was a question of fact for them whether the language was a threat to accuse of crime or to prosecute civilly, and also whether there was evidence of qualifying words indicating that the former was meant. *Held*, that the defendant had no ground of exception.

At the trial of an indictment for threatening to accuse another of the crime of burning a building of his, with intent to defraud the insurer, certain requests for instructions to the jury respecting the honesty of the defendant's belief that the insurer was defrauded and that he was authorized by him to settle his claims for the loss, were made. The jury, in response to an inquiry by the presiding judge, replied that he did not so honestly believe. *Held*, that the requests were rendered immaterial by this answer.

Under the Gen. Sts. *c.* 160, § 28, which provides for the punishment of any one who "maliciously threatens to accuse another of any crime," it is enough if the threat was wilful and intentional.

INDICTMENT on the Gen. Sts. *c.* 160, § 28, in three counts. The first count was as follows :

"The jurors for the Commonwealth of Massachusetts on their oath present, that Ezra S. Goodwin, of Boston aforesaid, on the seventh day of December, in the year of our Lord one thousand eight hundred and seventy-five, at Boston aforesaid, with force and arms, unlawfully and maliciously, did verbally threaten one Ferdinand Geldowski, that he, said Goodwin, would accuse him, said Geldowski, of having theretofore committed the crime of feloniously and wilfully burning a certain building of him, said Geldowski, with the intent of him, said Geldowski, to injure the insurer of said building ; said building having lately theretofore been burned and consumed by fire, and said building having been at the time of said fire insured against loss and damage by fire, with intent then and there and thereby to extort, from said Geldowski, a certain sum of money, to wit, the sum of twenty-five thousand dollars, against the peace of said Commonwealth, and the form of the statute in such case made and provided.

"And the jurors aforesaid, for the Commonwealth of Massachusetts, on their oath aforesaid, do further present, that William Fogg, of Boston aforesaid, before the said felony and threatening was committed, in manner and form aforesaid, to wit, on said day of December, with force and arms, at said Boston, did feloniously and maliciously incite, move, procure, aid, counsel, hire and command the said Goodwin, the said felony and threat-

ening, in manner and form aforesaid, to do and commit; against the peace of said Commonwealth, and the form of the statute in such case made and provided."

The second count was as follows: "And the jurors aforesaid, for the Commonwealth of Massachusetts, on their oath aforesaid, do further present, that Ezra S. Goodwin, of Boston aforesaid, on the ninth day of December, in the year of our Lord one thousand eight hundred and seventy-five, at Boston aforesaid, with force and arms, with intent to extort money from Ferdinand Geldowski, unlawfully and maliciously, did verbally threaten said Geldowski, that he, said Goodwin, would accuse him, said Geldowski, that a certain building of said Geldowski, insured against loss or damage by fire, he, said Geldowski, had lately theretofore unlawfully and maliciously burned and consumed, while the same was so insured, as aforesaid, with the intent of him, said Geldowski, to injure the insurer thereof; against the peace of said Commonwealth, and the form of the statute in such case made and provided.

"And the jurors aforesaid, for the Commonwealth of Massachusetts, on their oath aforesaid, do further present, that William Fogg, of Boston aforesaid, before the said felony and threatening was committed, in manner and form aforesaid, to wit, on said day of December, with force and arms, at said Boston, did feloniously and maliciously incite, move, procure, aid, counsel, hire and command the said Goodwin, the said felony and threatening, in manner and form aforesaid, to do and commit, against the peace of said Commonwealth, and the form of the statute in such case made and provided."

In the Superior Court, before the jury were empanelled, the defendants moved to quash the indictment, for the following reasons: "1. Because the threats set forth in the several counts are not threats to accuse of any crime or offence. 2. Because neither count alleges that the building, the burning of which Geldowski was threatened to be accused of, was situated in Massachusetts, or in any place where the burning of it, with the intent to injure the insurer, was any offence or crime, or that such burning was at the time thereof any offence or crime, nor alleges where the building was situate. 3. Because neither count sets forth by what person or company, nor to what amount, the

building was insured, nor what person or company Geldowski was threatened to be accused of intending to injure; nor that the threat was to accuse Geldowski of burning the building, knowing it to be insured. 4. Because neither count contains a sufficient description and designation of the building. 5. Because the second and third counts do not allege that the defendant Goodwin threatened to accuse Geldowski of having wilfully burned the building; and do not aver the amount of money intended to be extorted. 6. Because there is no sufficient allegation of time in either count as to the defendant Fogg." *Aldrich,* J., overruled the motion, and the defendants excepted. The defendants were then tried, and a bill of exceptions, in substance as follows, was allowed:

Ferdinand Geldowski, called by the government, testified as follows: " On December 7, 1875, the defendant Goodwin came to me at Boston, and spoke of a fire in my factory in East Cambridge, in 1870. He said he had brought a man from the South who knew the cause of the fire, and had made an affidavit that I hired him to set the fire. He then took a piece of paper out of his pocket, and said, ' I am the agent of these companies that you were insured in.' He showed me a piece of paper, and said, ' I suppose you recognize the companies.' I told him I recognized some of them; and he had some amounts put against the name of each company, and he said, ' Those companies paid you about $32,000, did n't they? ' I told him that was about the amount. He said, ' I am authorized from those companies to get back that money, and I am the only man you can settle with; have you any proposition to make ? '. I asked him what he meant. He said, ' How much will you give that nothing more will be said about it? ' I told him I would not give one cent, as the whole matter was a lie. He then jumped up, and said, ' I shall go and have you prosecuted.' I told him to go ahead, as quick as he pleased, and to tell the insurance folks to do the same. He then left me." On cross-examination the witness testified that the piece of paper shown him was a list of the insurance companies, with the amounts of the loss of each set against them, and that this was the only paper shown him at that time. There was no other evidence touching this conversation except that of the defendant Goodwin, who denied that he said " I shall

go and have you prosecuted," or anything to that effect. This was the evidence relied upon by the government on the first count.

Geldowski further testified: " The next day, Goodwin and William Fogg came to my factory, and Goodwin called me aside and said, ' This is the man that made the affidavit, and I give you a copy of it, and at your leisure you may study it. My name is Goodwin; I shall put it on the back of it, and my post-office address. If you want to address me by mail, you may do so after you have considered the matter.' He wrote his name and address, and then left. The next day Goodwin came to my store in Boston, and asked me if I had read the affidavit, and what I thought of it. I told him that there was not a word of truth in it; it was all a lie. He said, ' That is nothing to me. I am authorized by the insurance companies, and I am their agent, and I am to settle with you. I have got this case put in my hands, and I want this settled, and you had better consider the matter; in the condition you are in now, you cannot afford to have any talk made at this time, and I can settle this matter quietly with you, (I was in bankruptcy at this time,) and let us go somewhere, where we can sit down and have a room all to ourselves, and talk that thing over, and I will explain it to you, and you will see it in a better light.' I told him just then I was busy; I had had some business to attend to with my counsel about my bankruptcy matters, but in the evening, if he would come to my house, I would talk with him as long as he had a mind to. He said he would come about seven o'clock. That evening, December 9, he came to my house in Boston. Two officers were there. I took him into the dining-room, and he drew out that same piece of paper again, on which he had the names of the insurance companies written, and said, ' Now let us talk business. These companies have paid you $32,000, and the interest for five years amounts to $10,000 more, which will make it now $42,000, and I am authorized from the insurance companies to settle with you. I am to reserve 50 per cent. of all I can collect of you. I have been put to a great deal of expense in working up this job, and I have been three months to work about it. I have been to Florida after this man. I have spent about $1000 out of my own pocket.' I said to him, ' What

is it you want ? Be easy with me, in my present circumstances, as I have not committed any crime, and would not be willing to pay one cent on that ground ; but since you have been misled by a man who has perjured himself, and in order to avoid talk at the present time, I would be willing to compensate you for what expense you have been to; but not one cent of that money shall go to any of the insurance companies, as I would deem it a partial acknowledgment of guilt, of which I am innocent.' He said, ' I am alone in this matter, and hold the evidence in my own hands, and work for myself and nobody else.' Then I said to him, ' How will you satisfy the insurance folks ? ' ' The insurance folks can go to hell,' he said, ' and I will tell them the evidence I have is not worth a damn ! But how much will you give me to settle with me forever ? ' I told him I had no proposition to make. ' What do you propose ? ' ' Well,' he said, ' I propose to take $25,000, and say no more about it.' I laughed at him, and told him I was not guilty of any crime, and would not pay him any such amount, and if I should not pay him anything, what would he do about it ? ' Well,' he said, ' you would be prosecuted. Whatever is done must be done right away.' I told him I was not afraid of him, or of any man, as I had done nothing to be afraid of. He said, ' Let us talk business; how much will you pay ? ' I told him I would offer $5000, on condition that none of the money should go to any of the insurance companies, as they had no claim upon me, and I would only consider it as a present to him. Then Goodwin said, ' $5000 is not enough even for myself, although I did not intend to pay the insurance companies one cent of the money; but still you must make a better offer. Pay $10,000,' he said. I told him I would not pay that sum. He said, ' Well, call it $5000 and $5000 in furniture, as I am boarding now, and am going to housekeeping.' He said, ' By the way, what are you doing with your house in Somerville ? ' I told him it was unoccupied, and if he wanted to live there, rent free, it would not take much to furnish it, as it was partly furnished. He said, ' I could be a keeper for you, or agent for you, as I could have a chance to sell 't for you.' I told him, ' Yes, that is so.' He said, ' When will we go out to your house ? ' I said, ' Tomorrow afternoon at 3 o'clock.' He said, ' Let us understand our business; when will

you give me the $5000, and when can I have the furniture?' I told him the furniture I could not give him at present, as everything I had I put into the hands of my creditors to pay my debts, and I could not give him a stool-leg at that time; but when my business was fixed and in my own hands again, and affairs settled, I would satisfy him as to the furniture. Then he turned to a door and said, 'Is there any listeners about here? Where does that door lead to?' I said it led 'to my wife's china closet, and she has the key to it, and if you will take $2000 less in money, I will open the door and satisfy you there are no listeners.' The officers were then in the closet. He said, 'I will take your word for it; you are a better man than I thought you were; you are a square man, and you will find that I am a square man. Now, let us talk business again. I must have some money this week, as I am short of money.'

" I told him I could not say anything about the money till tomorrow, as I must borrow it. I said, 'I have no money; I have given up all I have.' He said, 'What time will you let me know?' I said, "In the afternoon,' and named a place. He said, 'I will be there, and I will wait for you an hour beyond the time.' I told him he must draw up some kind of an agreement and paper that at any future time he would not trouble me again; and Goodwin said, 'I shall not do that, as I am not going to put my head into any halter. I am a man of my word, and I take you to be a man of honor; and if I give you a paper to that effect it will only commit me to the insurance companies, and put me in their power; when I settle with you, I settle with you forever.'

" Then I told him Fogg ought to be in state prison for perjuring himself. He said, 'That is where he belongs, and I will help you put him there if you do the right thing by me. I have all this evidence against Fogg in my own possession. I had the affidavit sworn to in Key West. If both of us keep quiet about this, it will be for our mutual benefit, as this settlement must only be between you and me, and nobody else must know anything about it, as I am working for myself and nobody else, and nobody else will get a cent of this money; besides, I think I am a man of honor, and I take you to be a man of honor, and, if I give my word, no power on earth can make me break

it; besides, I would make myself liable as soon as I accept, and so would you, and if we both keep quiet about it, neither one of us — we would both make ourselves liable, and neither one of us can go back on the other.' That was substantially all that was said."

· Two officers testified that they were in the closet and heard this conversation. Goodwin denied saying to Geldowski that he would be prosecuted; and he further testified, both as to this interview of December 9 and that of December 7, that whatever he said as to any proceeding against Geldowski, he meant only civil proceedings.

This was the evidence relied on by the government on the second count.

It was in evidence that in January, 1871, the furniture factory of Geldowski, at East Cambridge, Massachusetts, was partially burned, and certain furniture of Geldowski's in it was also burned; and he testified that, after the fire, different insurance companies paid him losses amounting in all to some $32,000; that the defendant Fogg was at that time in the employ of Geldowski, and afterwards went to Florida.

The defendants put in evidence tending to show that in September, 1875, Goodwin was told that Geldowski had hired Fogg to set the fire, and had so defrauded the insurance companies; that soon after he (Goodwin) went to Florida, and found Fogg, and told him what he had heard, and asked him if it was true; and Fogg, after some hesitation, said it was, and detailed to Goodwin the circumstances, substantially as set forth in the affidavit, and then, at Goodwin's request, gave the affidavit referred to, and came to Boston with Goodwin, at his request, and at his expense. The affidavit was put into the case. It set forth that Geldowski hired Fogg to set fire to Geldowski's factory; that combustible materials were arranged by Geldowski; that Fogg set the fire, and was paid $1300 therefor.

It appeared that before Goodwin went to Florida he communicated with the Ætna Insurance Company, which had paid Geldowski a loss on this fire of some $5000 or more, and that, after hearing his statement, the president of the company gave him authority in writing to look up the evidence in the case for them, and agreed to give him fifty per cent. of what the com-

pany might collect from Geldowski, and that the company sent him two hundred dollars towards his expenses in Florida; and Goodwin testified that he told Fogg in Florida that he represented the insurance companies, and that he wanted him to come north to help them recover back the money from Geldowski; and Fogg testified that he believed this to be so, and that he came to Boston only for that purpose. Fogg and Goodwin both testified that no communication was ever made by Goodwin to Fogg as to what means Goodwin proposed or intended to employ to collect the money from Geldowski, and that Fogg had no knowledge upon that point; and there was no evidence on the part of the government that there was such communication or knowledge, except what might be implied from the other facts stated in this bill.

The defendants further offered evidence to show that, from the time when Fogg arrived in Boston, December 7, up to the time of his arrest, on December 10, he remained at the house of Goodwin, in Worcester Square, and did not go out, except on the occasion referred to, when he went with Goodwin to see Geldowski at East Cambridge; and it did not appear that Fogg, during this time, had any information as to what Goodwin was doing or saying, or intended to do or say; and Fogg and Goodwin both testified that Fogg had no such information, but was ignorant both of Goodwin's intentions and acts, except that he understood Goodwin was to collect the money for the insurance companies, and he was to give his statement when called upon.

It also appeared that, in Florida, Goodwin made a written agreement with Fogg, to the effect that if Fogg would come north with him and help him to collect the money for the companies, and do as he wished in all things, he would pay him $1000; and when Fogg was arrested on December 10, at 16 Worcester Square, after Goodwin had been arrested at the house of Geldowski, his first inquiry was if the officers came from the insurance companies.

Evidence was introduced by the government, tending to show that after Goodwin returned from Florida, and before he met Geldowski, his authority from the Ætna Insurance Company was revoked; and evidence was offered by the defendants tending to show that such was not the case, but that the secretary

of the company told Goodwin they were satisfied with what he had done, and to go ahead and finish it up as well as he could and Goodwin testified that he believed the insurance companies had a good claim against Geldowski, and that he was authorized to collect or settle it the best way he could.

The government, to show that whatever authority Goodwin had had from the Ætna Insurance Company was revoked before the first interview with Geldowski, called as a witness the secretary of the company, who testified, that on the morning after Goodwin's return from Florida, on December 7, 1875, (at an hour which was earlier than the time of Goodwin's first visit to Geldowski,) he (acting for the company) met Goodwin in Boston by appointment; that Goodwin read Fogg's affidavit, and that the witness asked Goodwin what corroboration could be given to Fogg's testimony, and then said to Goodwin that there was no case to present to a jury; that Goodwin said that he did not propose to collect the money by a trial; and that then the witness asked him what he proposed to do, to which Goodwin replied, "I shall go to Geldowski, and sit down opposite him, and read the affidavit to him, and put my hands on his knees, and say, 'Now I have got you;'" that the witness asked what Goodwin would do in case Geldowski refused to pay anything, to which Goodwin replied, "I will say to him, 'Old fellow, you'll be jugged!'" And the witness testified that he then withdrew all Goodwin's authority to act for the company in any way.

The defendants introduced evidence tending to contradict this, and to show that the secretary of the company, on the occasion just referred to, expressed satisfaction with what Goodwin had done, and told him to go ahead, and finish it up as well as he could.

The government also called as a witness J. W. Kinsley, president of an association of underwriters, who testified that Goodwin, before his journey to Florida, came to him, and asked him to get him authority from various insurance companies to collect from Geldowski what had been paid him; that he gave Goodwin a list of the companies, but marked the names of a majority of them, which he informed him were extinct; and that Goodwin said, "All the better; there will be so much the more for you and me;" and that the witness thereupon refused to have anything to do with the matter.

The foregoing was all the evidence material to the rulings and instructions prayed for and given, and was all the material evidence in the case affecting the defendant Fogg.

The defendants asked the judge to instruct the jury as follows : " 1. It is incumbent upon the government to prove that the building was insured, and that there was no evidence to warrant such a finding. 2. There is no evidence to warrant the conviction of Fogg on either count. 3. There is a variance between the indictment and the proof on all the counts, as to the offence which Goodwin threatened to accuse Geldowski of ; the indictment alleging the offence to be the burning of the building by Geldowski, and the evidence only tending to show that it was, if anything, the hiring and procuring of Fogg to burn it. 4. A statement to a person that he will be prosecuted unless he settles a claim, cannot be deemed to be a threat to accuse of crime ; and the words testified to by the government witnesses do not constitute or import such a threat within the meaning of the statute. 5. The word 'prosecute' may refer and apply to both civil and criminal proceedings with equal propriety, and unless a person using the word uses other words with it, indicating that it refers to criminal rather than civil, it is not to be taken to refer to criminal ; and the jury, without such other words so used with it, would not be authorized to find that it did refer to criminal proceedings ; and in this case there is no evidence of other words used indicating any reference to criminal proceedings. 6. If Goodwin honestly believed that the insurance companies had been defrauded by Geldowski, by means of the fire, and that they had a good and valid claim to recover back the insurance money ; and if he was, or honestly believed himself to be, authorized to settle or collect the claim, and said whatever was said by him with the purpose and intent only of so collecting it for the companies, or the Ætna Insurance Company, then, although the words used might otherwise constitute a criminal threat, the using of them with such purpose and intent only would not be an offence within the meaning of the statute. 7. The statute is not meant to cover cases where the intent is to obtain only that which, in justice and equity, the party making the threats is entitled, or honestly believes himself entitled, to receive. 8. If the jury should find that threats were

made, but made only for the purpose of collecting a claim which
Goodwin honestly believed to be due, and himself authorized to
collect, such threats cannot be deemed to be threats made mali-
ciously, nor with the intent to extort, and the making of them
would not be an offence within the statute.    9. If Goodwin hon-
estly believed that he had a right to do and say what he did and
said for the purpose of collecting the claim, and did not intend
to threaten to accuse of any crime, nor to commit any offence,
there is no evidence of malice, nor of the intent to extort, and
the defendants cannot be convicted.    10. The burden is on the
government to satisfy the jury beyond a reasonable doubt that
Goodwin did not have, or did not believe that he had, authority
to settle with Geldowski, and that he did not believe the compa-
nies had a good claim against Geldowski to recover back their
money; and that he said what he said to Geldowski, not for the
purpose of collecting the claim for the companies, but for the
purpose and intent of obtaining and extorting from Geldowski
money which he, Goodwin, knew he had no right to receive, and
which he knew Geldowski was under no obligation to pay; and
that he did this with malice towards Geldowski.    11. By the
word 'maliciously,' used in the statute, is signified a feeling
of ill-will, spite, revenge and malice towards the person threat-
ened."

As to the first ruling asked for, the judge ruled that it was
incumbent upon the government to prove that the building was
insured, but declined to rule as requested in the last clause.

The second ruling asked for, the judge declined to give, but
submitted the question to the jury, whether there was evidence
showing that Fogg was an accessory, with instructions as to
what constituted that offence, not excepted to.

The third request, as to a variance, was refused.

Upon the fourth request, the judge instructed the jury that the
language, " I will have you prosecuted," or " I will prosecute
you," was language which might be applicable to a civil process
as well as to a criminal process, and with equal propriety; but
submitted it to the jury, as question of fact to be determined by
them upon all the evidence in the case, whether the threat of
prosecution, if one was made by Goodwin, was a threat to accuse
of crime, or whether it was a threat only that he would prose-
cute Geldowski civilly.

Upon the fifth request, the judge said to the jury: "I have no hesitation in giving you that instruction so far, that, if all the language used by Goodwin was the word 'prosecuted,' — 'I will have you prosecuted,' — and there was nothing else said by Goodwin to qualify the language, then, inasmuch as that may be used with reference to civil as well as criminal proceedings, and is as consistent with one theory as with the other, it is the duty of the jury to adopt the first, if that is all there is to the evidence upon this subject, and there are no qualifying words ; but whether in this case there are such qualifying words, I will leave for you to determine. I am asked to say that in this case there is no evidence of other words used indicating any reference to a criminal proceeding. That I decline to do, but leave it for you, as it is your province to decide that question, and not mine."

As to the sixth, seventh and eighth requests, the judge instructed the jury that even if an insurance company had an equitable and legal claim against Geldowski for the recovery of this money back, and Goodwin believed that he was authorized as agent of the company to collect it, yet, inasmuch as Geldowski denied the claim, that it would be an offence, and would bring Goodwin within the purview of the statute under which this indictment was found, and what had been explained to them in the first part of the clause, if he maliciously threatened to accuse Geldowski of this crime of burning his building, with the intent to compel him to pay that money by means of that threat so made, he had no right to undertake to collect the money in that way.

On the ninth request, the judge instructed the jury that it was a question of fact whether Goodwin did or did not maliciously make this threat; if he made it at all, did he make it, that is for an illegal or unlawful purpose, to obtain in an unlawful way the money ; and that he could not excuse himself in this case, any more than any other party charged with a crime, on the ground that he believed he had a right to act as he did; that a man was supposed to know the law, and even if Goodwin honestly believed he had a right to do and say what he did, if, nevertheless, he maliciously threatened to accuse Geldowski, as set forth in the indictment, for the purpose of extorting this

money from him, the honesty of his belief did not discharge the act of its criminal character.

Upon the tenth request, the judge said to the jury: "I instruct you that the burden of proof is upon the government in every part of this case to make out all that is necessary to convict the defendant of this offence; whatever is necessary the government must prove, and I have instructed you in regard to the matter of Goodwin's belief, as to whether this claim was honest." The judge had previously fully instructed the jury as to what it was necessary for the government to prove to maintain this indictment.

Upon the eleventh request, the judge instructed the jury that malice in law included not only anger, hatred, revenge; that it was not confined to ill-will towards any one or more persons, but was to characterize all actions flowing from any wicked or corrupt motive; that such was malice in law, that it did not, as already said, necessarily mean hatred, ill-will or revenge; but any illegal act performed, as charged in this case, with the intent to extort money, is an act done with malice, or maliciously done.

Other proper instructions were given as to other parts of the case, not excepted to. The jury found both defendants guilty on the first and second counts, and not guilty on the third count, and at the time of giving the verdict the judge proposed certain questions, which it had been announced would be asked, as follows:

"Did Goodwin honestly believe that the insurance companies had been defrauded by Geldowski by means of the fire?"

"If the jury find that Goodwin made a threat to Geldowski to accuse him of the crime of burning his own building, to defraud the insurers, did Goodwin, at the time he made the threat, honestly believe himself to be authorized to settle or collect the claim in behalf of the insurance companies, or in behalf of any one of the companies?"

The jury answered both questions in the negative. The defendants alleged exceptions.

*J. H. Bradley*, for the defendants.

*W. C. Loring*, Assistant Attorney General, (*C. R. Train*, Attorney General, with him,) for the Commonwealth.

Colt, J.   The indictment is for an attempt to extort money by threats of a criminal accusation.   Gen. Sts. *c.* 160, § 28.   It charges that the defendant Goodwin did maliciously, verbally threaten to accuse Geldowski of feloniously and wilfully burning a building belonging to him, which was at the time insured against loss or damage by fire, with intent to injure the insurer. This is substantially the language of the statute making such an act criminal.   The defendants moved to quash, because the threats charged are not threats to accuse of any crime, and insist that the exact words of the threat, or the substance thereof, should have been set forth.

The indictment does not purport to give the exact words used by Goodwin; if it did, it might be necessary to prove them at least substantially.   The gist of the offence is the attempt to extort money; the words used do not alone constitute the crime, which is distinguishable from those where words alone are the gist of the offence; as in prosecutions for scandalous words spoken to a magistrate; or for seditious or blasphemous words; or for libel.   In such cases the words must be set out with particularity.   *Commonwealth* v. *Moulton*, 108 Mass. 307.   It is enough here to charge the defendant with verbally threatening to accuse of a specified crime, and the charge will be supported by proof of such a threat in words used by the defendant. *Commonwealth* v. *Murphy*, 12 Allen, 449.   *Commonwealth* v. *Dorus*, 108 Mass. 488.   In *Commonwealth* v. *Moulton*, the allegation was of a verbal threat "to accuse one of having committed the crime of adultery with" a person named, and it was held sufficient, on a motion to quash, although the language was not set forth.

It is not necessary to set forth the facts, constituting the crime of which accusation is threatened, with the particularity required in an indictment for the crime itself.   *Commonwealth* v. *Murphy*, *ubi supra*.   The allegation here is that the wilful burning of the building, under the conditions stated, was a crime.   It was not necessary to a · full, formal and substantial description of the offence of attempting to extort money by such threats, that the situation and description of the building, or the amount for which it was insured, or the names of the companies or individuals who were to be injured as insurers thereof, should be stated.

The allegation in each count against Fogg, that he incited Goodwin to the crime charged on the " said day of December," is made sufficiently certain as to time by reference to the day of that month last before named. The motion to quash the indict-ment was rightly overruled.

The specific instructions requested which were not given were rightly refused, or given with proper qualifications, after full in-structions not excepted to had been already given, as to what the government must prove to maintain the prosecution.

There was evidence from many sources, admitted without ob-jection, that the property burned was insured. A contract of insurance may be effected without a written policy. No written contract to insure was disclosed in the evidence admitted, and there was no violation of the rule which requires the production of the writing, or some excuse for its non-production.

There was evidence that Fogg was accessory to the crime charged in the first and second counts. It is to be found in his intimate relations with Goodwin ; in the fact that he stopped in his house while in Boston, without going out, except when he went to see Geldowski, and was present at the interview between him and Goodwin ; in the falsity of the affidavit which he fur-nished ; and in other circumstances and conduct, which it is not necessary to state. There is enough to justify the inference that he knew that money was to be extorted by threats, if possible, and that he aided in that purpose.

There was no variance, as claimed in the third request, be-tween the allegations and the proof. The threat proved was a general threat to prosecute ; it is consistent with a threat to accuse Geldowski of the crime of hiring Fogg, as an innocent agent, to set fire to the building. The burning of one's own building becomes a crime only when done under peculiar circum-stances, as when done to defraud insurers ; and there is no evi-dence that Fogg, when he fired the building, knew that it was insured. In the commission of the crime, Geldowski would be principal under such a state of facts. And besides, the affidavit of Fogg, if taken as interpreting the threats used, shows that the former took the part of a principal in arranging combustible materials for the fire, by the rule that, where there is a series of acts, constituting together one criminal transaction, the per-

formance of the several acts separately by different individuals will make all principals. *Regina* v. *Kelly*, 2 Car. & K. 379. 1 Bishop Crim. Law, (6th ed.) § 650.

The qualifications which were added by the judge to the fourth and fifth requests were strictly correct, and fairly required by the state of the evidence upon which the government relied. The meaning of the language used must be ascertained by taking all the words in connection with the conduct of the party using them, and the subject matter to which they are applied, especially where the language, as here, is capable of different meanings.

The sixth, seventh, eighth, ninth and tenth requests are disposed of by the finding of the jury, in answer to the inquiry of the court, that Goodwin did not honestly believe that the insurance companies had been defrauded by the fire, and that he was authorized by them to settle their claims for the loss. The instructions asked were not required by the evidence in the case. *Lawler* v. *Earle*, 5 Allen, 22.

There is no authority for the proposition contained in the eleventh request, that the word "maliciously," as used in the Gen. Sts. *c.* 160, § 28, means a feeling of ill-will, spite, revenge and malice towards the person threatened. The wilful doing of an unlawful act without excuse is ordinarily sufficient to support the allegation that it was done maliciously and with criminal intent. There are some injuries, in the nature of trespasses to property, which are made criminal and punished as malicious mischief, where, in the words of the statutes, the acts are done "wilfully and maliciously." It has been held, with reference to that class of offences, that the malice required to support the prosecution must contain the additional element of cruelty or of hostility or revenge towards the person. The wilful doing of an unlawful act without excuse, when applied, as a definition of malice, to injuries to property alone, would make many more trespasses punishable criminally, against the plain intention of these statutes. It is the special depravity or special hostility towards the owner which makes a crime of that which would otherwise be a mere trespass to property. The crime here charged is an offence of a different description; it is an attempt to extort money, and is not to be classed with malicious mischief.

The act itself implies criminal intent, and there is no occasion, in construing the statute, to hold that, to create the offence, anything more is required than is implied in the usual definition of malice. *Commonwealth* v. *Williams*, 110 Mass. 401. *Commonwealth* v. *Walden*, 3 Cush. 558.    *Exceptions overruled.*