COMMONWEALTH *vs.* WILLIAM H. BYARD.

Bristol.   October 26, 1908. — November 24, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Moving of Buildings.   Malicious Injury to Trees.   Tree Warden.   Words,*
  " Wantonly."

R. L. c. 52, § 13, providing that no person shall move a building in a way in a town
  without written permission from the selectmen or road commissioners, under
  R. L. c. 26, § 2, applies to cities as well as to towns.

The removal through a street of a city of a building, which is five feet longer and
  about a foot and a half wider than the building described in the permit granted
  under R. L. c. 52, § 13, is unlawful.

Under R. L. c. 51, § 10, a tree warden has no right to cut down trees or to cut off
  parts of trees standing on private land outside the boundary lines of a street.

At the trial of an indictment against a tree warden under R. L. c. 208, § 100, as
  amended by St. 1902, c. 544, § 30, for wilfully, maliciously or wantonly injuring
  a tree standing for a useful purpose on the land of another, an instruction to the
  jury, stating in substance that a manifestly injurious act, done wilfully in reck-
  less disregard of the rights of others, is done " wantonly " within the meaning
  of the statute, is correct.

At the trial of an indictment against a tree warden under R. L. c. 208, § 100, as
  amended by St. 1902, c. 544, § 30, for wilfully, maliciously or wantonly injuring
  a tree standing for a useful purpose on the land of another, the judge instructed
  the jury that if the defendant, acting as a reasonable man, was justified in be-
  lieving and honestly believed that he had the authority which he exercised he
  was not guilty, but that, if they found that, had the defendant taken any proper
  precaution to learn of his rights and duties as a tree warden, he would not have
  acted as he did, and if they found that he was grossly negligent in the per-
  formance of his duties as tree warden, they might find that he acted wantonly.
  *Held,* that the instruction was correct in substance.

At the trial of an indictment against a tree warden under R. L. c. 208, § 100, as
  amended by St. 1902, c. 544, § 30, for wilfully, maliciously or wantonly injuring
  a tree standing for a useful purpose on the land of another, it appeared that the
  defendant was asked to cut off a part of a cherry tree by a person who had ob-
  tained a permit to move a building through the street, but that the building he
  undertook to move was longer and wider than the building described in the
  permit, so that its removal was not lawful, that its width was so great that it
  could not be taken through the street without cutting off branches and a part
  of the trunk of the cherry tree, that the owner of the tree refused to permit this
  to be done, and that the defendant, assuming to act under his authority as tree
  warden, did it against her protest.   The defendant admitted on cross-examina-
  tion that he had not at any time taken any steps to inform himself as to his
  powers, duties and authority as tree warden, except that he asked the mayor
  what he should do-and was told to lop off trees in the highway which would
  obstruct carriages or the apparatus of the fire department, that he never had
  read any of the statutes or other sources of information concerning his powers
  and duties, except that he looked once or twice in a book sent to him by the

State forester, that he had not seen anything in that book concerning his duties in such a case as this, that after he was asked to cut off the parts of the cherry tree he took no steps to inform himself as to his powers, duties or authority, that he did not attempt to ascertain what the permit was or whether the building was of the dimensions given in the permit, that he made no inquiry of the mayor or the city clerk, and did not consult the city solicitor, although he knew that he had a right to ask the city solicitor about it. It also appeared that he began the cutting without saying anything to the owner of the tree and that, although the evening before the cutting he saw the husband of the owner and talked with him after he had viewed the premises and had made up his mind to cut the tree, he said nothing to the husband about it. There was testimony as to the way in which the tree was cut and as to the defendant's having said that he was doing the mover of the house a favor. *Held*, that there was evidence warranting a finding that the defendant in cutting the tree acted wantonly, and justifying the jury in returning a verdict of guilty.

KNOWLTON, C. J. The defendant was found guilty upon an indictment framed under the R. L. c. 208, § 100, as amended by the St. 1902, c. 544, § 30, alleging that he "wilfully and maliciously and wantonly did injure a tree, standing for a useful purpose, of the property of Minnie M. Glendon." This was a large cherry tree standing near the line of the street, within its owner's enclosure, and it had large branches extending over the street. One part of the trunk, about fourteen inches in diameter, extended over the line of the street about nine feet above the ground. One Nickerson obtained from the proper authorities a permit to move a building through the street, around the corner, into another street. Mrs. Glendon's lot at and near the corner abutted on both streets. The building was five feet longer and about a foot and a half wider than that described in the permit, and therefore the authority given did not justify the removal of this larger building through the street. Under R. L. c. 52, § 13, which applies to cities * as well as towns, (R. L. c. 26, § 2,) its removal in that place was unlawful.

Its length and width were such that it was necessary to carry it over a part of Mrs. Glendon's land near the corner of the street, and to cut down a small tree in her yard, and Mrs. Glendon agreed with Nickerson that this might be done. Its width was so great, and houses upon the other side were so located, that it could not be taken through the street without cutting off branches and a part of the trunk of the cherry tree. The owner

* The city in this case was Fall River.

of the tree refused to permit this to be done, and the defendant, assuming to act under his authority as a tree warden, did it against her protest.

The first question that arises is, What is the authority of a tree warden under R. L. c. 51, § 10. Does it include a right to cut down trees, or to cut off parts of trees, standing on private land outside of the boundary lines of the street? We are of opinion that it does not. The surveyors and road commissioners, under the last clause of this section, should cause parts of such trees to be removed if they obstruct the way, or endanger, hinder or incommode persons travelling thereon. In the early part of the section an exception is made of "public shade trees in towns;" but trees and bushes standing in ways may be trimmed or lopped off, or, in pursuance of a vote of the mayor and aldermen, selectmen or road commissioners, passed after public notice and a hearing, may be cut down and removed by the officer who has the care of trees belonging to a city or town. But this part of the section has reference only to trees and bushes "standing in ways." The defendant had no legal right to cut off the branches of the tree, and the ruling on this part of the case was correct.

The defendant's counsel presented seventeen requests for rulings, some of which are covered by what we have said, and many of which relate to the meaning of the word "wantonly," used in the indictment. Under this indictment it was not necessary to prove that the defendant acted maliciously. Indeed, the Commonwealth did not contend that the charge of malicious action was sustained, and the judge * instructed the jury that it was not sustained. The case was left to stand upon the allegation that the defendant acted wantonly.

The judge instructed the jury that " an act done heedlessly, without regard to the propriety demanded by the circumstances of the case, and in reckless disregard of the rights of others, with a total absence of care, amounting in this case to gross negligence by the defendant in the discharge of his duties as tree warden, would be an act done wantonly." We are of opinion that a manifestly injurious act, done wilfully, in reck-

* *Dana*, J.

less disregard of the rights of others, is done wantonly within the meaning of this statute. *National Folding Box & Paper Co. v. Robertson*, 125 Fed. Rep. 524. *Werner v. State*, 93 Wis. 266. 30 Am. & Eng. Encyc. of Law, (2d ed.) 2, 3, 4. The jury were further instructed that if the defendant, acting as a reasonable man, was justified in believing and honestly believed that he had the authority that he exercised, he was not guilty; but if they found that if he had taken any proper precaution to learn of his rights and duties as tree warden, he would not have acted as he did, and found that he was grossly negligent in the performance of his duties as tree warden, they might find that he acted wantonly. Wilfully to do an irreparably injurious act without trying to ascertain what his rights and duties were, and to go on in gross negligence of his duties, indicated a spirit of wantonness and reckless disregard of right and wrong in his conduct affecting others. We are of opinion that the instructions on this branch of the case were substantially correct, and that the defendant's requests were rightly refused.

We are also of opinion that there was evidence to which the instructions were properly applicable, and which well warranted the finding of the jury. There were a variety of circumstances tending to sustain the contention of the Commonwealth. The defendant admitted in cross-examination that he had not at any time taken any steps to inform himself as to his powers, duties and authority as tree warden, except that he asked the mayor what he should do and was told to lop off trees in the highway which would obstruct carriages or the apparatus of the fire department; that he had never read any of the statutes or other sources of information concerning it, except that he looked once or twice in a book sent him by the State forester; that he had not seen anything in that concerning his duties in such a case as this; that he took no steps to inform himself as to his powers, duties or authority after Mr. Nickerson made complaint about this cherry tree; that he did not attempt to ascertain what the permit was, or whether the building was of the dimensions given in the permit; that he made no inquiry of the mayor or the city clerk, and did not consult the city solicitor, although he knew he had a right to ask the city solicitor about it. It also appeared that he began the cutting

without saying anything to the owner of the tree, and that, although he saw her husband and talked with him the evening before the cutting after he had viewed the premises and made up his mind to cut the tree, he said nothing to the husband about it.    There was also testimony for the consideration of the jury as to the way in which the tree was cut and as to the defendant's having said that he was doing Mr. Nickerson a favor. The bill of exceptions shows no error of law at the trial.

*Exceptions overruled.*

*B. Cook, Jr.*, for the defendant.

*J. M. Swift*, District Attorney, for the Commonwealth.