COMMONWEALTH vs. KENNETH L. PERUZZI.

Suffolk. January 10, 1983. — March 10, 1983.

Present: GREANEY, KAPLAN, & DREBEN, JJ.

*Destruction of Property. Practice, Criminal,* Instructions to jury. *Error,*
Harmless. *Words,* "Malicious," "Wilful."

Discussion of the development of the concept of malice in relation to
criminal proceedings for malicious damage to property. [440-443]
At the trial of an indictment under G. L. c. 266, § 127, charging wilful
and malicious damage to personal property, the judge erred in his in-
structions to the jury which, although properly referring to malice as a
state of mind involving cruelty, hostility or revenge, incorrectly stated
that "malice includes any intention to inflict injury without legal
justification." [443-444]
At the trial of an indictment under G. L. c. 266, § 127, an error in the
judge's instructions to the jury as to malice was not harmless, where his
other instructions permitted them to convict the defendant either of
wilful and malicious destruction of property or of the lesser offense of
wanton destruction of property. [444-447]

INDICTMENT found and returned in the Superior Court
Department on October 14, 1980.

The case was tried before *Wagner, J.*

*John E. Conwell* for the defendant.

*Muriel Ann Finnegan,* Assistant District Attorney, for the
Commonwealth.

GREANEY, J. The defendant has appealed from his con-
viction by a jury on an indictment under G. L. c. 266,
§ 127,[1] which alleged that on May 28, 1980, the defendant
"did wilfully and maliciously injur[e] and destroy certain

---

[1] General Laws c. 266, § 127, as in effect prior to St. 1982, c. 229, § 2,
provided in relevant part: "Whoever destroys or injures the personal prop-
erty, dwelling house or building of another in any manner or by any means
not particularly described or mentioned in this chapter shall, [1] if such
destruction or injury is wilful and malicious, be punished by imprison-

personal property, to wit: a van, the property of [the] Massachusetts Bay Transportation Authority, . . . the value of the property so injured and destroyed being in excess of one hundred dollars." The only question raised by the appeal is whether the judge erred in his instructions to the jury on the meaning of the word "malicious" in the section of G. L. c. 266, § 127, bracketed as [1] in note 1, *supra.*

The evidence presented by the Commonwealth may be summarized as follows. At approximately 3:00 A.M. on May 29, 1980, Massachusetts Bay Transportation Authority (MBTA) employee James Flynn was sitting in a rear seat of an MBTA walk-in step van parked near a subway entrance in East Boston. Two other MBTA employees who had accompanied him to the job site in the van had entered the subway to inspect a repair job. As Flynn waited for them in the back of the van, a three to four foot length of pipe was suddenly thrust through the front passenger window, breaking it. Flynn jumped up, looked through the window and observed the defendant holding the pipe, which was then thrust through the window a second time. Flynn grabbed the pipe and threw it to the ground through the open door of the van. At the same time, he observed that a second man had raised the hood of the van and was tampering with something in the engine compartment. Flynn seized a pick handle from inside the van, exited and confronted the two men. Threatening words were directed at Flynn. He immediately reentered the van and drove away

---

ment in the state prison for not more than ten years or by a fine of three thousand dollars or three times the value of the property so destroyed or injured, whichever is greater and imprisonment in jail for not more than three years; or [2] if such destruction or injury is wanton, shall be punished by a fine of fifteen hundred dollars or three times the value of the property so destroyed or injured, whichever is greater, or by imprisonment for not more than three years; if the value of the property so destroyed or injured is not alleged to exceed one hundred dollars, the punishment shall be by a fine of three times the value of the damage or injury to such property or by imprisonment for not more than three months . . . ." The numbers in brackets have been inserted for ease of reference in the body of this opinion.

with the van's hood still raised. He soon discovered that the van's service brakes were completely inoperable. Using the parking brake, Flynn carefully brought the van back to the scene of the incident to await the return of his two fellow employees. The defendant and the other man had by then left. When the other workers returned, Flynn told them what had happened. The three men then walked to a police station. The defendant was spotted by Flynn from a patrol car approximately forty-five minutes later standing on a street corner one block away. The police officers who were with Flynn when he made the identification immediately arrested the defendant. There was testimony that the brake malfunction was caused by damage to brake components under the van's hood and that the total cost of repairing the brakes and the broken window was $205. The defendant rested without presenting any evidence.

The judge instructed the jury on the element of malice as follows: "Malicious refers to state of mind or cruelty, hostility or revenge . . . . Malice or malicious includes not only those motives which may spring from anger, hatred or revenge in a person, but from any other unlawful purpose or unjustifiable motive that such a person may harbor. The word malice includes any intention to inflict injury without legal justification." At the close of the charge, counsel for the defendant moved that the jury be reinstructed with reference to the malice requirement to the effect that they must acquit the defendant unless they found that he damaged the van "in a sense of hostility revenge, or cruelty."[2] This instruction was refused by the judge and an objection taken to his ruling. The defendant argues that the instruc-

[2] The judge had been previously alerted to the defendant's view of the importance of the concept contained in the requested correcting instruction. Counsel for the defendant had moments before, in argument on a motion for a required finding of not guilty, Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979), called the judge's attention to the decision in *Commonwealth* v. *Goodwin*, 122 Mass. 19 (1877), in which the special malice element required for a conviction of wilful and malicious damage was explained.

tions misstated the element of malice. There is no contention by the Commonwealth that the defendant has failed to preserve the issue for review. We are also satified that the issue was properly saved. See *Commonwealth* v. *Benders,* 361 Mass. 704, 707-709 (1972).

1. The development of the concept of malice in malicious damage cases may be traced to *Commonwealth* v. *Walden,* 3 Cush. 558 (1849), where the defendant was indicted under a statute prohibiting the wilful and malicious destruction or injury of the personal property of another. There the court expressly disapproved a jury instruction which "defined the word 'maliciously,' . . . to mean 'the wilfully doing of any act prohibited by law, and for which the defendant had no lawful excuse; and that moral turpitude of mind was not necessary to be shown.'" *Id.* at 559. This construction of the statute, it was thought, failed to distinguish malice from wilfulness, making possible an unwarranted imposition of criminal liability for minor acts of wilful trespass involving trifling injury. *Id.* at 560. Citing Blackstone, the court held that "[t]he jury should . . . have been instructed, that, to authorize them to find the defendant guilty, they must be satisfied, that the injury was done either out of a spirit of wanton cruelty or wicked revenge . . . . [W]e have no doubt that such is the true definition of the crime." *Id.* at 561. See 4 Blackstone, Commentaries *243.

The concept of "hostility" was added to the qualifying states of mind of "cruelty" or "revenge" to define further the element of malice by *Commonwealth* v. *Williams,* 110 Mass. 401 (1872), where the court dealt with a statute punishing the wilful or malicious injury or destruction of the building of another. Relying upon the *Walden* case, the court in *Williams* held that "the jury must be satisfied that the injury was done out of a spirit of cruelty, hostility or revenge. This element must exist in all those injuries to real or personal property done wilfully and maliciously which are enumerated and made criminal in the several statutes . . . . The act, although intentional and unlawful,

is nothing more than a civil injury, unless accompanied with that special malice which the words 'wilful and malicious' imply." *Id.* at 402-403.

In dicta appearing in *Commonwealth* v. *Goodwin*, 122 Mass. 19 (1877), a case of attempted extortion, the court restated the holding of the *Walden* decision, expressly noting that "the malice required to support the prosecution [of a malicious damage case] must contain the additional element of cruelty or of hostility or revenge towards the person. The wilful doing of an unlawful act without excuse, when applied, as a definition of malice, to injuries to property alone, would make many more trespasses punishable criminally, against the plain intention of these statutes. It is the special depravity or special hostility towards the owner which makes a crime of that which would otherwise be a mere trespass to property." 122 Mass. at 35.

These cases dealt with statutes which typically defined the proscribed acts of mischief strictly in terms of wilful and malicious (or wilful *or* malicious) destruction of or injury to the property of another. See, e.g., Rev. Sts. c. 126, § 39 (1836); St. 1862, c. 160. Unlike G. L. c. 266, § 127, which was enacted in substantially its present form in 1902, the earlier statutes contained no provision for an offense of "wanton" injury or destruction.[3] The *Walden* court, in the context of one of the earlier statutes, held that a "spirit of wanton cruelty" (3 Cush. at 561) would imply the malice requisite to a conviction. The Legislature has since seen fit, however, to enact the present statute, which differentiates sharply between wilful and malicious damage on the one hand and wanton damage on the other. See the portions of the statute bracketed as [1] and [2] in note 1, *supra*. In view of the Legislature's intervening creation of this distinction, the language in *Walden* which appears to equate "wanton cruelty" with malice might now be subject to criticism.

---

[3]The first statutes expressly dealing with "wanton" (as opposed to "malicious") mischief were apparently St. 1902, c. 544, §§ 30-32 (dealing with wanton destruction of items such as trees and fences), and St. 1904, c. 305 (dealing with wanton destruction of personal property).

In *Commonwealth* v. *Hosman*, 257 Mass. 379 (1926), the court reviewed convictions of being accessories to the malicious destruction to two automobiles on an indictment framed with reference to the modern statute. The defendants' agent, engaged in delivering bootleg liquor, had allegedly been instructed by the defendants not to stop for police and to "crash through them" if necessary. The police attempted to stop the agent by blocking his path with two automobiles and the agent, faithful to orders, attempted to run the blockade, damaging the vehicles extensively. The Supreme Judicial Court upheld the trial judge's instruction to the jury that "the Commonwealth must prove something more than a deliberate intent to do a wrong; that they must be satisfied that the act was something more than a deliberate act; 'it must have been done through a sense of hostility or of ill will or of wanton cruelty.'" *Id.* at 384. The potential in these instructions for blurring the statutory distinction between wilful and malicious destruction and wanton destruction was apparently not made an issue on appeal. This circumstance may at least partially explain the decision's citation of *Commonwealth* v. *Byard*, 200 Mass. 175 (1908), in its discussion of malice, although the *Byard* case dealt only with wanton, not malicious, conduct. See *id.* at 177. Despite the references to "wanton cruelty" and the *Byard* decision, it is clear that the *Hosman* court viewed the evidence of the defendants' orders to their agent as probative of hostility and ill will in the sense that those terms were used in the older cases. Citing both the *Goodwin* and *Williams* decisions, the court held that the defendants' "spirit of hostility and ill will against the property and person of anyone, whoever he was, if he stood in the way, or barred the progress of [the agent], was wilful and malicious."[4] *Commonwealth* v. *Hosman*, 257 Mass. at 385. We read the *Hosman* decision as reaffirming the holdings in

---

[4] The *Hosman* court held, at 384-385, that a defendant, to be convicted of malicious damage, need not know the identity of the owner of the property he damages, so long as he acts with the special malice required. It was therefore not necessary, in the present case, for the Commonwealth to prove that the defendant was possessed of ill will towards the MBTA, or even that he was aware of the ownership of the van.

the earlier cases that "something more than a deliberate intent to do a wrong" must be shown to establish malice. *Id.* at 384.

The continued vitality of the concepts of malice applied in the cases discussed is confirmed by modern criminal law commentators. Justice Nolan states in his text that "[m]ost of the statutes dealing with the crime of destruction of property require a showing that the defendant wilfully and maliciously destroyed or defaced the property. The terms *wilful* and *malicious* are not used redundantly. They convey different meanings within the context of criminal destruction of property. The word 'wilful' means intentional and by design in contrast to that which is thoughtless or accidental. Malice, on the other hand, refers to a state of mind of cruelty, hostility or revenge. Both elements are required for the crime of destruction of property or as it is sometimes referred to, malicious mischief." (Emphasis in original.) Nolan, Criminal Law § 427, at 259 (1976). Continuing with reference to the offense charged here, he writes that "[i]n most other crimes, the wilful doing of an unlawful act is a sufficient basis for a finding of malice; not so, however, [under G. L. c. 266, § 127]. The wilful and unlawful act of destroying another's property is only a civil wrong unless there is a showing of malice in the sense of hostility, revenge or cruelty." Nolan, *supra* at 259. Discussion of similar import, written in more general terms, can be found in Clark & Marshall, Crimes § 12.43 (7th ed. 1967).

Against this background, we examine the jury instruction in the present case, which closely follows that which now appears in the Model Jury Instructions for Criminal Offenses Tried in the District Court Department 5.301 (1982).[5] The instruction began by correctly referring to malice, as the term is used in G. L. c. 266, § 127, as a state

---

[5]The model District Court instruction reads, in pertinent part: "The word *malice* signifies a wrongful act *done intentionally* without legal justification or excuse. You must be satisfied that the act was something

of mind involving cruelty, hostility or revenge. Quite independent of this concept, however, the instruction proceeded to convey the notion (in the words of the charge) that "malice includes any intention to inflict injury without legal justification." The Commonwealth argues that the latter statement merely instructed the jury "that they could infer malice from the act itself," and that "[t]his is not a case where the judge charged the jury that the wilful doing of an unlawful act was sufficient in itself to establish malice." We think that it is precisely such a case and that no reasonable reading of the instruction supports the narrow interpretation which the Commonwealth would have us superimpose on the judge's plain and unambiguous language. In this regard we take special note of the judge's remark that malice "includes not only those motives which may spring from anger, hatred or revenge in a person, *but from any other unlawful purpose or unjustifiable motive"* (emphasis added). The charge thus directly confronted the jury with successive, conflicting standards of malice, including the "intentional injury without legal justification" formulation which Supreme Judicial Court decisions have long disapproved in malicious damage cases. However appropriate such instructions may be in cases involving other crimes, see, *e.g., Commonwealth* v. *Scanlon,* 373 Mass. 11, 18 (1977); *Commonwealth* v. *McInerney,* 373 Mass. 136, 140-141 (1977); *Commonwealth* v. *Estremera,* 383 Mass. 382, 395 (1981), it is beyond dispute that they misstate the law of malicious damage. The model District Court instruction is similarly flawed.

2. The Commonwealth argues that despite any error in the charge, there was overwhelming evidence of malice, and "[i]t cannot be said that the jury would have drawn any different conclusion had the judge given the precise instruc-

---

more than a deliberate act; it must have been done through a sense of hostility, or of ill will, or cruelty. Thus, if, after the evidence, you find the defendant intended to purposely cause the damage or destruction of the property of another, he is guilty of malicious destruction of property." (Emphasis in original.)

tion requested by the defendant." It is asserted, on this theory, that the error was harmless. We disagree.

The erroneous instruction related solely to the issue of the defendant's state of mind. Although, on the facts of this case, it could have had no bearing on the jury's determination that the defendant was involved in some criminal conduct, it was highly relevant to the question of exactly what crime he had committed, since the judge chose to give the jury the option of convicting of wanton destruction of property. The question before us, therefore, is the effect of the error on the jury's choice between the wilful and malicious destruction branch and the wanton destruction branch of G. L. c. 266, § 127.

There are competing "tests" of harmless error in cases involving constitutional and nonconstitutional error, and the field of controversy which has developed over them has been well plowed by numerous commentators. See *Commonwealth* v. *Hanger*, 377 Mass. 503, 510-511 (1979), and cases and sources cited. See also *Commonwealth* v. *DeChristoforo*, 371 Mass. 26, 35-36 (1976); *Commonwealth* v. *Gilday*, 382 Mass. 166, 178 (1980). We need not summarize the scholarly discussion, since we conclude that the error in this case would fail any reasonable test of harmlessness. The preeminent decision in this area, and one which has often been cited with approval in our own cases, is the opinion of Justice Rutledge in *Kotteakos* v. *United States*, 328 U.S. 750 (1946). It was there noted (at 764-765) that "[i]f, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of [the Legislature] . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the

result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." In the present case, the jury were never afforded an opportunity, through clear instructions, to decide between the characterizations of the defendant's actions as wanton or malicious. The absence of the necessary explanation of fundamental distinctions leaves us with a doubt over the effect of the charge sufficient to compel reversal of the conviction.

The Commonwealth urges that there could have been only one outcome on the evidence. We can only note that the trial judge, who heard the evidence and observed the witnesses, saw fit to submit the case to the jury on alternative theories of wanton or malicious destruction. The prosecutor appears to have regarded submission of the case in this form proper. We also think the evidence warranted separate jury consideration of the offense of wanton destruction. "[A] manifestly injurious act, done wilfully, in reckless disregard of the rights of others, is done wantonly . . . ." *Commonwealth v. Byard,* 200 Mass. at 177-178. See also Nolan, *supra* at 260. The jury could have found that the van was damaged not because the defendant harbored hostile, cruel or vengeful feelings toward its owner (whoever that owner may have been, *see* note 4, *supra*), but because the defendant acted wantonly in the sense described by the *Byard* case. "We are not authorized to look at the printed record, resolve conflicting evidence, and reach the conclusion that the error was harmless because we think the defendant was guilty. That would be to substitute our judgment for that of the jury and, under our system of justice, juries alone have been entrusted with that responsibility." *Weiler v. United States,* 323 U.S. 606, 611 (1945). See also *Bollenbach v. United States,* 326 U.S. 607, 615 (1946). The error is no less harmful because it involves the jury's choice between two offenses, or acquittal, rather than the choice between conviction and acquittal. See *Evans v. United States,* 277 F.2d 354, 356 (D.C. Cir. 1960);

3A Wright, Federal Practice and Procedure § 854, at 324 (2d ed. 1982). We conclude that the charge, for all practical purposes, denied the defendant an opportunity to have the jury consider conviction of a less odious offense and one less severe in penalty.

*Judgment reversed.*

*Verdict set aside.*