645 So.2d 1005 (1994)
Algernon SAMPSON, Appellant,
v.
STATE of Florida, Appellee.
Nos. 93-01874, 93-01876.
District Court of Appeal of Florida, Second District.
July 29, 1994.
*1006 A.R. Mander, III of Greenfelder, Mander, Hanson, Murphy & Dwyer, Dade City, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee and Dale E. Tarpley, Asst. Atty. Gen., Tampa, for appellee.
BY ORDER OF THE COURT:
Upon consideration of the appellee's motion for rehearing filed on April 29, 1994, it is
ORDERED that the motion for rehearing is granted and the prior opinion filed April 20, 1994, is withdrawn. The attached opinion is substituted for it.
RYDER, Acting Chief Judge.
A jury convicted Algernon Sampson of possession of cocaine and battery. At the same time, the trial court found that Sampson had violated his probation. In this consolidated appeal, Sampson seeks reversal of both the revocation of his probation and his convictions on the new charges. He raises three issues. First, he challenges the admission of evidence about his prior drug conviction. Second, he claims the evidence was insufficient to support his conviction for battery and that the trial court, therefore, erred in denying his motion for judgment of acquittal on that charge. Although we find the evidence sufficient to support the battery conviction, we hold that the testimony about his prior conviction tainted the entire trial. We therefore reverse both new convictions and remand for a new trial. We also reverse the revocation of probation. As his last point, Sampson argues that he was illegally sentenced as a habitual offender. We agree, but because of our resolution of his first issue, this question is moot.
In November 1991, Sampson was placed on probation for possession of cocaine. In October 1992, he and his brother were involved in a fracas with their cousin in a restaurant parking lot. The cousin initially told the police Sampson participated in the fight, and also gave a sworn, written statement to this effect. At some later date, however, he said he was intoxicated when he made these statements. The police officer responding to the scene did not smell alcohol on the victim's breath. At a pretrial deposition and at trial the cousin stated Sampson did not hit him and was only trying to break up the fight. He further testified at trial that he had initially told police that Sampson hit him on the back of the head. He also admitted on the witness stand that he was unconscious during part of the attack and that he would not know if Sampson hit him while he was unconscious.
While Sampson and his brother also testified that Sampson was not involved in the attack, five other independent witnesses presented a different picture. Two witnesses testified that Sampson struck the first blow, on the back of the victim's head. All five *1007 witnesses saw Sampson hit the victim, and three witnesses said he kicked the victim in the ribs. One witness observed Sampson sitting on the victim's head.
After the altercation, Sampson and his brother left the restaurant parking lot. Sampson later learned the police were looking for him, so he drove to the Dade City police station to turn himself in. Before he went, his mother told him to empty his pockets, which he did. His mother testified that he pulled both front pockets completely out.
Sampson testified that Officer White frisked him, placed him in the booking room and was then called away. Detective Swartz came in and searched him. Swartz put his hands all the way into Sampson's pockets. Officer White returned to deliver Sampson to a holding cell. At that point, Detective Swartz inquired whether White had taken everything out of Sampson's pockets. White told Sampson to empty his pockets, and Sampson pulled out a little plastic bag containing crack cocaine. Sampson was positive that the bag was not in his pockets when he pulled them out for his mother. Sampson believed that Swartz planted the cocaine on him.
Over Sampson's objections, the state offered the testimony of Detective O'Connor in rebuttal. O'Connor said she had previously purchased cocaine from Sampson. Apparently this purchase formed the basis of the charges that resulted in his probation in 1991.
We will briefly address Sampson's contention that the evidence was insufficient to support a conviction for battery. The information charged him with "actually and intentionally touch[ing] or strik[ing] [his cousin] against the will of [his cousin]." Sampson argues that because his cousin testified at trial that he did not hit, strike or touch him against his will, the trial court erred in refusing to grant his motion for judgment of acquittal. We hold that the issue was properly submitted to the jury. The jury was entitled to assess the victim's credibility, particularly in the light of his conflicting statements, his relationship to Sampson and the fact that he was unconscious during part of the incident. Moreover, other witnesses supported the victim's initial version of the fight.
We next address Sampson's assertion that the trial court erred in permitting the state to present testimony about his prior sale of cocaine as rebuttal evidence. The state contends Sampson's claim that Swartz planted the cocaine is analogous to an entrapment defense. When a defendant claims entrapment, evidence of prior crimes is admissible because it is relevant to rebut the defense by showing his predisposition to commit crimes of the type charged. Biondo v. State, 533 So.2d 910 (Fla. 2d DCA 1988). The lower court admitted the testimony for the purpose of showing predisposition. We hold that the trial court erred and reverse.
The absence of a defendant's predisposition to commit the offense is the essential element of an entrapment defense. Herrera v. State, 594 So.2d 275, 277 (Fla. 1992); see also § 777.201, Fla. Stat. (1991) (entrapment creates a substantial risk that a crime "will be committed by a person other than one who is ready to commit it"). The accused must show he lacked predisposition. Munoz v. State, 629 So.2d 90 (Fla. 1993). To rebut this essential element of the defense, "the prosecution may make `an appropriate and searching inquiry' into the conduct of the accused and present evidence of the accused's prior criminal history, even though such evidence is normally inadmissible." 629 So.2d at 99 (emphasis added). Evidence about predisposition to commit a crime is only relevant in this limited circumstance where the defendant puts his lack of predisposition at issue. We decline to extend its relevancy to a situation where the defendant has not specifically raised the entrapment defense. To do otherwise would be to ignore section 90.404(2), Florida Statutes (1991), and the Williams rule.
Sampson did not claim he was entrapped. He asserted he was not guilty because the cocaine was not his; the police had planted it on him. Just because an accused claims some possible police misconduct does not mean that he is raising entrapment. We must, therefore, determine whether the testimony *1008 about Sampson's previous crime was relevant to this case and whether its probative value was outweighed by the danger of unfair prejudice. Bryan v. State, 533 So.2d 744 (Fla. 1988), cert. denied, 490 U.S. 1028, 109 S.Ct. 1765, 104 L.Ed.2d 200 (1989).
The facts here are similar to those in Carr v. State, 578 So.2d 398 (Fla. 1st DCA 1991). The police searched Carr outside a Lake City home. Based on an outstanding warrant, they took him to the Columbia County detention center, where he was again searched. In this second search, the police allegedly found two baggies of cocaine in his left shirt pocket. At trial, a defense witness testified that the police had thoroughly searched Carr on the street. They had not discovered any cocaine during this initial search. The trial court permitted the state to introduce Williams rule evidence that Carr was a cocaine user and had been convicted of possession of cocaine. The First District reversed, noting that Carr's prior conviction was not relevant to the charges being tried.
Nor was evidence of Sampson's prior cocaine offense relevant to the charges being tried here, particularly the battery charge. Here, as in Carr, the real issue was one of credibility. The jury had to decide whether to believe Sampson's version of what happened in the police station or Deputies White's and Swartz's versions. The jury may have inferred guilt on the present charges on the basis of the evidence implying that Sampson had the propensity to commit drug offenses. The evidence should also have been excluded because its probative value was outweighed by the danger of unfair prejudice. Bryan, 533 So.2d at 747.
Accordingly, we reverse Sampson's conviction for possession of cocaine and battery, and remand for a new trial on these charges. We also reverse the revocation of Sampson's probation. Our review of the record leads us to believe that the trial court may have found a violation of probation because the jury convicted Sampson of the two offenses. We, therefore, remand for further proceedings before the trial court on this issue as well.
Because of our reversals of Sampson's convictions, his argument that he was illegally sentenced is moot. We do note, however, that during simultaneous sentencing, a single scoresheet must be used for all offenses pending before the court. Lambert v. State, 545 So.2d 838 (Fla. 1989).
Reversed and remanded.
LAZZARA, J., concurs.
PARKER, J., concurring in part and dissenting in part.
PARKER, Judge, concurring in part and dissenting in part.
I concur with the majority that the cocaine and battery charges must be reversed and remanded for a new trial. Unlike the majority, I would affirm the revocation of probation. The trial judge was vague when addressing the violation of probation, and I am unable to discern whether the violation was based on the jury's verdict or on the evidence that Sampson committed a battery. Because the trial court's revocation of probation is sustainable based on the evidence of battery presented at trial, I believe that the revocation of probation should be upheld. See Stuart v. State, 360 So.2d 406 (Fla. 1978) (trial court should be affirmed if record on appeal supports a theory under which order is sustainable).