955 So.2d 1145 (2007)
Carl Ray SEESE, III, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-3695.
District Court of Appeal of Florida, Fourth District.
March 28, 2007.
Rehearing Denied June 7, 2007.
*1146 Carey Haughwout, Public Defender, and Paul E. Petillo, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Georgina Jimenez-Orosa, Senior Assistant Attorney General, West Palm Beach, for appellee.
FARMER, J.
Carl and Holly dated for 6 or 7 months before she ended their relationship. He was upset about it and kept trying to see her. Holly obtained an injunction prohibiting him from having any contact with her. While he was in jail for violating the injunction, she began receiving collect telephone calls from him. She recorded 5 of his calls. Her phone records confirmed the jailhouse calls. She notified the police, who also overheard his calls and even spoke to him. The calls continued and increased  14 one day, 18 the next, 34 another. Once he called her every 2 minutes for an extended period of time. In a period of 8 days, he made 90 calls to her. He was charged with aggravated stalking for contacting her in violation of a court order.[1]
In addition to her testimony, the phone records, and police testimony, the recorded calls were played for the jury. His trial defense was that it was all a misunderstanding, not a case of harassment or malicious stalking  it was only a broken heart. On appeal he complains of the failure to instruct the jury on an element of the crime, in spite of his failure to ask for such an instruction, and of the state's closing argument. The state suggests that while this may not have been a fatal attraction, it *1147 certainly was a fateful obsession. We affirm.
The standard jury instructions for criminal cases do not define maliciously in the approved instruction for section 784.048(4). See Fla. Std. Jury Instr. (Crim.) 8.7(b) ("To prove the crime of Aggravated Stalking, the State must prove the following two elements beyond a reasonable doubt . . . (defendant) knowingly, willfully, maliciously, and repeatedly followed or harassed (victim) and (defendant) did so in violation of . . . any [other] court imposed prohibition of conduct toward (the victim). . . ."); Standard Jury Instructions in Criminal Cases (95-1), 657 So.2d 1152, 1154 (Fla. 1995). Notably the defense did not ask for a special instruction on the meaning of the term maliciously.
In closing argument the defense contended that the state failed to prove maliciously. Counsel argued that defendant may have been:
"[d]esperate, hurt, scared, maybe even pathetic, but not malicious. Mr. Seese is begging, he sounds pathetic and he sounds desperate. But he doesn't sound malicious. He's not threatening her, not saying that he's going to hurt her. . . . He doesn't rant. . . . There's no malice in that. . . . Those phone conversations are specifically about moving forward with his life, moving on. There is no malice in Carl Seese's words. There is no malice in his voice. There is no threat to harass her."
. . .
"On those tapes . . . you don't hear any threats. He discusses with [Holly] if she's still planning on moving out of state and if she wants him to postpone the case. . . . From the tone of Mr. Seese's voice on those tapes, from the words that he is saying, there is no malice."
The state argued in closing that it met its burden of proof:
"Let's talk about maliciously. State has to prove that he acted with malice. In other words he acted with . . . bad intent, that he didn't have any good intentions, that there was . . . no good cause for what he was doing. There was no justification. Maliciously.
"Now let's talk about how we've proven that he acted maliciously. Well, for starters, calling her 90 times collect from jail . . . during the hours that he knew  because they had dated before  her schedule, times he knew she was going to be home. . . . That's malicious  calling someone's house. Ninety times is certainly malicious. There is no good intent to that. He's not acting with any justification. . . . "
"You heard the tapes. . . . He heard the desperation in her voice, as you did: `Do you understand me?' She says `stop calling here.' And he'd call right back. Somebody with good intent after someone tells them not to call them, after they know there is a court imposed prohibition against contacting that person, is that person acting with good intention? No, they're acting maliciously. They are acting with malice. Regardless of whether he was desperate or not she told him not to call. He continuously called. The judge told him not to contact her. He continued to contact her. That's malice."
Defendant made no objections to the state's closing argument.
During deliberations, the jury asked for a dictionary. In response, defendant proposed a special instruction, which was approved and given by the court, the sense of which was that any word not specifically defined as part of the jury instructions should be considered by the jury as having *1148 its ordinary, common meaning. The trial court told the jury:
"You must decide this case only on the evidence that has been received during the trial and on the law in which I have instructed you. So, the answer is you cannot have a dictionary or any other outside reference material. However, you're further instructed that any word which was not particularly defined as part of the jury instruction is to be considered by you as having its common and ordinary, everyday meaning."[2]
Not only did defendant make no objection to the court's response, but he in fact requested the very substance of it. Later the jury sent a question seeking "the legal definition of maliciously" and whether it could have the court reporter's notes explaining "what maliciously means per the state attorney" read back. Without objection by defendant and again with his consent, the court responded by telling the jury that:
"Any word which is not specifically defined in the jury instructions you must consider to have its normal, commonplace, everyday understanding of that particular word.
"Maliciously was not specifically defined in the jury instructions, so are you to rely on your own common understanding of the definition of that word. Okay? And to the extent that you thought the state attorney in her closing argument referred to a legal definition that the court would be giving, that was not a correct understanding. I wish we could  can be  more helpful."
The jury returned to its deliberations and found him guilty as charged.
On this appeal defendant now argues that it was fundamental error for the trial court to fail to define maliciously, that the state exploited the omission by arguing a definition prejudicial to his position. The state argues there is no error at all, let alone fundamental error. All the elements of the crime were instructed, it says, and he agreed to the plain and ordinary meaning of maliciously.
Jury instructions are subject to the rule that the affected party must contemporaneously object to an instruction given or, instead, propose the instruction not given. See Fla. R.Crim. P. 3.390(d) ("No party may raise on appeal the giving or failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objection."); State v. Delva, 575 So.2d 643, 645 (Fla. 1991) (failure to explicitly instruct jury whether defendant knew substance was cocaine is not fundamental error and could be preserved for appeal only by proper objection). The general rule is that a party may complain of an instruction given, or an instruction not given, only if the party raised the issue with the trial judge and secured a ruling. 575 So.2d at 644. This is necessary because the matter can then be corrected at trial and thereby avoid an appellate issue.
If no objection is made at trial, the issue may be raised on appeal only if the circumstances demonstrate fundamental *1149 error. Id. To be deemed fundamental, "the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Id. at 644-45; see also Walls v. State, 926 So.2d 1156, 1180 (Fla.2006) (same). Failing to instruct on a necessary element of the crime "over which the record reflects there was no dispute" is not fundamental error. Delva, 575 So.2d at 645; see also Battle v. State, 911 So.2d 85, 89 (Fla.2005).
The record does not support the argument that this case involves a failure to instruct the jury on a material element of the crime. The court's decision not to give an unrequested special definition of maliciously did not "reach down into the validity of the trial to the extent that the verdict of guilty could not have been obtained without the assistance" of the omission.
The record demonstrates that the court did instruct the jury that the state was required to prove maliciously beyond a reasonable doubt. See Fla. Std. Jury Instr. (Crim.) 8.7(b). Section 784.048 does not contain any special definition of the term maliciously. As we have previously noted, the drafters of Standard Jury Instruction 8.7(b) did not specially define the term maliciously  presumably because the drafters of section 784.048(4) did not do so.[3] Under these circumstances, the term maliciously in both the statute and its companion Standard Jury Instruction must be understood as a word of common usage having its plain and ordinary sense. See State v. Hagan, 387 So.2d 943, 945 (Fla.1980) ("In the absence of a statutory definition . . . such words are construed in their plain and ordinary sense."); see also State v. Mitro, 700 So.2d 643, 645 (Fla. 1997) (where a statute does not specifically define words of common usage, such words are construed in their plain and ordinary sense). Applying these principles, and acceding to defendant's own request, the trial court instructed the jury that it must give the term maliciously its "normal, commonplace, everyday meaning," which we regard as the functional equivalent of "plain and ordinary" meaning. Hence, no judicial error here of any kind  no fundamental error.
In law the term malice and its adverbial form maliciously have two meanings: "legal malice" (also known as "malice in law"), and "actual malice" (also known as "malice in fact"). Reed v. State, 837 So.2d 366, 368 (Fla.2002). Legal malice means "wrongfully, intentionally, without legal justification or excuse," while actual malice means "ill will, hatred, spite, an evil intent." Id.[4] Taking the text of section 784.048(4) as a whole, and considering its context and the discernible purposes of the legislature, we conclude that the plain meaning of the statutory term maliciously is legal malice: i.e. "wrongfully, intentionally, without legal justification." We reach this conclusion because the essence of this entire subsection is to criminalize the stalker who violates a court order prohibiting the contact with the subject. Section 784.048(4) punishes the person who continues to contact the subject in spite of a court order barring such contact  in other words, wrongfully, intentionally and without legal justification. That is precisely the conduct charged and proved in this case.
*1150 Defendant's requested special instruction authorized the state to make the very argument it made in this case. The state could argue that defendant's conduct was wrongful because it was in direct violation of a court order. It was intentional because it was repeated, persistent and undertaken in spite of his incarceration for previously violating the same order. It lacked legal justification because the very repetition and persistence, the very excess of his many calls, the rejection of her pleas on the recorded conversations to leave her alone, all this amounted to the absence of any possible reason justifying his long pattern of conduct. The nature of his many calls proclaimed not desperation but spite, a desire to see her suffer, an addiction to acts of ill will. The very fullness of his conduct allowed the state to argue that it did not much matter which definition of maliciously one used; his actions fit them all.
The record of this trial is a powerful demonstration that the instructions to the jury were not error and did not cause any legal prejudice to defendant. The evidence of his violation of the court order is immense and stands utterly unrefuted. Indeed so crushing is the mountain of evidence establishing his guilt that defendant's only trial strategy was  not that he did not do it  but that in doing it his heart was broken and pure. He did what he did because he was desperate to have her remain in his life.
This strategy was probably his only hope of evading a conviction. It allowed him to exploit the lack of a formal, standardized definition of maliciously in section 784.048(4). Instead, by proposing a special instruction allowing the jury to employ any common ordinary, everyday meaning of this term, he could then mount his argument against the heavier meaning of actual malice: "ill will, hatred, spite, an evil intent." He could argue that while the evidence demonstrated an overwrought continuing violation of the court order, it showed only that his painful desperation was not out of "ill will, hatred, spite, or evil intent." Only in this way could he plausibly advocate reasonable doubt in the face of the mass of evidence. With the case against him so compelling, this was his only tactic.
Which brings us to our final point. The Committee on Standard Jury Instructions (Criminal) has found it mete and proper to define the term maliciously  and its kindred malice  in other instructions. See Fla. Std. Jury Instr. (Crim.) 10.13 (§ 790.19, shooting or throwing missiles in a dwelling); 12.4 (§ 806.13, criminal mischief); 16.1 (§ 827.03(2) aggravated child abuse). In the instructions for only two statutes has the Committee failed to define the terms. See Fla. Std. Jury Instr. (Crim.) 8.7 (§ 784.048, aggravated stalking); and 29.12 (§ 877.08(2), vending machine tampering or damaging). Undoubtedly this omission follows the statutes.
The fact that the legislature failed to give a special definition of a term hardly means that the Committee should refrain from doing so. It is far preferable to have a standardized instruction on this element of the crime used throughout the state than to have ad hoc and differing formulations in each trial where the issue is presented. It strikes us that justice would be better served by a standardized instruction for section 784.048(4) defining maliciously to mean "wrongfully, intentionally, and without legal justification," for that is surely the sense in which the legislature used the term in this statute.
Affirmed.
STONE and MAY, JJ., concur.
NOTES
[1] "Any person who, . . . after any . . . court-imposed prohibition of conduct toward the subject person . . ., knowingly, willfully, maliciously, and repeatedly . . . harasses, . . . another person commits the offense of aggravated stalking, a felony of the third degree,. . . ." [e.s.] § 784.048(4), Fla. Stat. (2004).
[2] When the jury asked for a dictionary to ascertain the "common, ordinary and everyday" meaning, the request was properly denied. See Smith v. State, 95 So.2d 525, 528 (Fla.1957) ("a dictionary is not one of the things permitted to be taken into the jury room"). But  paradoxically  a court may refer to a dictionary to ascertain the plain and ordinary meaning that the legislature intended to assign the word. L.B. v. State, 700 So.2d 370, 372 (Fla.1997). Is the need of jurors for a dictionary any less than that of judges? Are there good reasons to allow jurors some access to the dictionaries that legislators and judges use?
[3] Yet the statute and standard instructions do define the terms harass and credible threat.
[4] The standard dictionary meanings track the legal meanings. The OED defines maliciously as "given to malice; addicted to sentiments or acts of ill will; wicked or evil disposition." OXFORD ENGLISH DICT. (Compact 2d ed.) 1025. The AHD defines it as: "desire to harm or see others suffer; act without just cause or reason; extreme ill will or spite." AMER. HERITAGE DICT. (3d ed.) 1088.