995 So.2d 1029 (2008)
Jeffrey McCAIN, Appellant,
v.
STATE of Florida, Appellee.
No. 2D07-3829.
District Court of Appeal of Florida, Second District.
October 31, 2008.
Rehearing Denied December 18, 2008.
*1030 James Marion Moorman, Public Defender, and Brad Permar, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and William I. Munsey, Assistant Attorney General, Tampa, for Appellee.
NORTHCUTT, Chief Judge.
Either Jeffrey McCain was in the wrong place at the wrong time, or he conspired with a friend to prepare and sell drugs to an undercover officer. In convincing the jury of the latter, the prosecutor relied on improper Williams[1] rule evidence. We reverse for that reason and because the trial court committed fundamental error when responding to a jury question. We remand for a new trial.
An undercover detective arranged to buy one ounce of methamphetamine from Brian Fifer, and the two agreed to consummate the deal in a McDonald's restaurant *1031 parking lot. When Fifer arrived, McCain was in the car with him. Fifer alone delivered the drugs to the detective's car, and he was immediately arrested. McCain had been waiting in Fifer's car, and he was ordered to exit the vehicle. He was then arrested when the police discovered a baggie containing methamphetamine residue in his pocket. McCain was not charged with possession of drugs or paraphernalia involving the baggie, but both McCain and Fifer were charged with trafficking and conspiracy to traffic in narcotics. Fifer negotiated a plea deal for six years in prison. McCain was convicted after a jury trial and was sentenced to fifteen years in prison.
In addition to the facts described above, the undercover detective also testified regarding McCain's post-Miranda[2] interview. According to the detective, McCain said that he supplied Fifer with vitamin capsules used as "cut" and that he helped Fifer mix the vitamins with the drugs in order to increase the quantity. The prosecutor also introduced evidence that McCain was in the driver's seat when arrested.
In defense, McCain and Fifer both testified that McCain was only catching a ride with Fifer. Both denied that McCain knew of or was involved in the drug deal. They acknowledged that McCain gave Fifer some vitamin capsules, but both men denied that McCain knew why Fifer wanted the capsules or that he helped Fifer empty the capsules and mix their contents with the drugs. On the other hand, Fifer admitted on cross-examination that he might have referred to McCain as either his friend or his partner when the undercover detective asked Fifer if anyone was accompanying him to the McDonald's. The State also introduced a taped telephone call Fifer made from jail. In the conversation, Fifer said that McCain was in the driver's seat so they could make a quick getaway after the deal.
Prior to trial, McCain filed a motion in limine to exclude any evidence regarding the baggie found on his person, but the motion was denied. McCain argues on appeal that the trial court abused its discretion in admitting this Williams rule evidence, and we agree. The supreme court has explained that relevance is the overriding test for the admissibility of evidence in a criminal trial; evidence relevant to a material fact in issue is admissible, even when it points to the commission of another crime, "except where the sole relevancy is character or propensity of the accused." Williams v. State, 110 So.2d 654, 663 (Fla.1959).
The Williams rule is codified in the Florida Evidence Code as section 90.404(2), Florida Statutes (2006), which states in part:
(2) OTHER CRIMES, WRONGS, OR ACTS.
(a) Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
Although relevance, not similarity, is the touchstone for admissibility, similarity is often what makes the Williams rule evidence relevant to prove a material fact in issue. See Williams v. State, 621 So.2d 413, 414 (Fla.1993) ("[I]t is generally the similarity between the charged offense and the other crime or act that gives the evidence *1032 probative value."). While embracing a broad rule of admissibility for relevant evidence in Williams, 110 So.2d at 662, the supreme court "emphasize[d] that the question of the relevancy of this type of evidence should be cautiously scrutinized before it is determined to be admissible." The danger, of course, is that the jury might infer the defendant's guilt on the present charge based on his propensity for criminal conduct. See Sampson v. State, 645 So.2d 1005, 1008 (Fla. 2d DCA 1994) ("The jury may have inferred guilt on the present charges on the basis of the evidence implying that Sampson had the propensity to commit drug offenses.").
In Sampson, the police allegedly found cocaine in Sampson's pocket when he turned himself in after a parking lot fracas, but at trial Sampson offered evidence to support his claim that the police planted the drugs. 645 So.2d at 1007. The State was allowed to introduce rebuttal testimony from a detective who had previously purchased cocaine from Sampson. Id. This court reversed, concluding that the evidence of Sampson's prior cocaine offense lacked any relevance to the crimes charged. Id. at 1008. In reaching this conclusion, we rejected a comparison between Sampson's defense and that of entrapment, which allows the introduction of normally inadmissible evidence to show a defendant's predisposition to commit the crime.
In Richardson v. State, 528 So.2d 981 (Fla. 1st DCA 1988), the First District reversed Richardson's convictions for multiple counts of sale and possession of cocaine because the trial court erroneously admitted evidence that a matchbox with drug residue was found in his possession at the time of his arrest. As in this case, "nothing tied the matchbox to any of the charges against appellant," and "the evidence of the matchbox was admitted solely to show propensity to possess cocaine at an earlier time, evidence which is inadmissible under the Williams Rule." Id. at 982.
By contrast, the Fourth District in Tannihill v. State, 912 So.2d 2 (Fla. 4th DCA 2005), affirmed the admission of Williams rule evidence concerning a previous drug sale, offered to rebut the defendant's claim that he was an innocent bystander to the charged drug sale. The court rejected the argument that the charged and uncharged offenses must share unique factors, but in that case there were in fact strong similarities between the two. In regard to the charged trafficking offense, a confidential informant testified that the defendant was in an apartment kitchen cooking cocaine while another individual sold drugs to the informant. Id. at 3. As to the uncharged offense, the informant testified that the defendant sold her the drugs directly while he was cooking cocaine in the same kitchen. The similarities there made the evidence of the uncharged offense relevant to rebut the theory of defense.
In this case, however, the absence of similarities rendered the collateral crime evidence irrelevant to the charges for which McCain was being tried. Other than the type of drug involved, there were no similarities between McCain's mere personal possession of a baggie with methamphetamine residue and the charges that he trafficked and conspired to traffic in a large quantity of the substance. See Hill v. State, 624 So.2d 826, 827 (Fla. 2d DCA 1993) (distinguishing sentencing options available for drug users but not drug traffickers and noting that "[t]he personal acquisition and consumption of illegal drugs differs sharply . . . from the peddling of such drugs for profit"); cf. United States v. Glen-Archila, 677 F.2d 809, 816 (11th Cir.1982) ("For evidence of an extrinsic act to be admissible as proof of intent . . . , it must require the same intent as the *1033 charged offense. . . ."). We conclude that the Williams rule evidence served only to show McCain's propensity to commit drug crimes.
We cannot say that admitting the improper evidence was harmless error. In fact, such evidence "is presumed harmful error because of the danger that a jury will take the bad character or propensity to crime thus demonstrated as evidence of guilt of the crime charged." Straight v. State, 397 So.2d 903, 908 (Fla.1981). According to the State, McCain helped Fifer prepare the drugs, accompanied him to the deal, and moved to the driver's seat to facilitate a quick departure afterwards. According to McCain and Fifer, McCain unwittingly provided legal vitamins to a friend and rode along in the car, unaware of the drug deal. The baggie of residue found in McCain's pocket showed his propensity to be a drug user, but it did not tend to show his involvement in drug trafficking. Given the danger of unfair prejudice from this evidence, we cannot say beyond a reasonable doubt that "there is no reasonable possibility that the error contributed to the conviction." See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla. 1986).
Our reversal in this case is supported by our analysis of another issue raised by McCain regarding the trial court's response to a jury question. On the conspiracy charge, the jury was instructed that the State must prove "the intent of Mr. McCain was that the offense of trafficking in amphetamine would be committed." The word control appeared throughout the jury instruction on the trafficking charge. During deliberations, the jury asked for the legal definitions of intent and control. The trial court called the jury in and, without substantial input from the attorneys, answered the question as follows:
As far as the definition of intent and control, this is part of what I meant yesterday when I said the jury decides how the law applies. The legislature writes these laws, and they use words like intent, control, and they don't illuminate that. They just use those words so that people like you, scattered all over the state, can decide what those words mean in any particular case. And that's the way you have to do it.
Because what those words mean in this case might be different from what some other jury thinks they mean in some case in West Palm Beach. That's the way it works, okay?
No objections were raised, and the jury returned to its deliberations, ultimately convicting McCain as charged.
A court is given discretion in responding to jury questions, Fla. R.Crim. P. 3.410, and the court here could have defined the terms, referred the jurors to the instructions previously given, or instructed that they should consider undefined terms as having common and ordinary meanings. See, e.g., Perriman v. State, 731 So.2d 1243, 1247 (Fla. 1999) (finding no abuse of discretion in referring jury to previous instructions but noting that when "appropriate, the court may also clarify a point of law with a brief, clear response"); Seese v. State, 955 So.2d 1145 (Fla. 4th DCA) (directing jury to give everyday meaning to undefined term), review denied, 968 So.2d 557 (Fla.2007). Instead, the court told the jury that the legal terms meant, basically, whatever the jury wanted them to mean.
"[D]ue process requires `that a defendant be accorded the right to have a Court correctly and intelligently instruct the jury on the essential and material elements of the crime charged and required to be proven by competent evidence.'" State v. Kettell, 980 So.2d 1061, 1068 (Fla. *1034 2008) (quoting in part Gerds v. State, 64 So.2d 915, 916 (Fla.1953)). Although jury instruction issues must be preserved for appeal by contemporaneous objection, and the error in this case was not preserved, fundamental error occurs when an instruction contains an incorrect definition of a disputed element of the crime. See Reed v. State, 837 So.2d 366 (Fla.2002) (finding fundamental error when court gave standard jury instruction defining malice element of aggravated battery but standard instruction was incorrect and malice element was disputed at trial).
McCain's intent to participate in the drug deal was a critical issue at trial, and the court's response to the jury's request for the legal definition of intent might have been confusing and misleading. "Giving the jury a misleading instruction on such an issue clearly is an error which reaches `down into the validity of the trial itself.'" York v. State, 932 So.2d 413, 416 (Fla. 2d DCA 2006) (quoting in part State v. Delva, 575 So.2d 643, 644 (Fla.1991)); see also McKenzie v. State, 830 So.2d 234, 237 (Fla. 4th DCA 2002) (stating that "test is not whether a particular jury was actually misled, but instead . . . whether the jury might reasonably have been misled").
We find no merit to the other issues raised on appeal.
Reversed and remanded for a new trial.
FULMER, J., and CANADY, CHARLES T., Associate Judge, Concur.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla. 1959).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).