# Supreme Court of Florida

_____

No. SC2021-1204
_____

**KEVIN F. TOMLINSON,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

August 24, 2023

COURIEL, J.

Kevin Tomlinson threatened to ruin the reputation of two fellow real estate brokers unless they paid him. Must the State prove that Tomlinson made this threat with hatred for the complainants in seeking a conviction under Florida's extortion law, section 836.05, Florida Statutes (2015)? In the decision before us, the Third District Court of Appeal said no, holding that section 836.05 requires the State to prove that the defendant made a threat "intentionally and without a lawful justification." *Tomlinson v. State*, 322 So. 3d 212, 216 (Fla. 3d DCA 2021). That expressly and

directly conflicts with the Fifth District Court of Appeal's decision in *Calamia v. State*, 125 So. 3d 1007 (Fla. 5th DCA 2013). There, citing our decision in *Carricarte v. State*, 384 So. 2d 1261 (Fla. 1980), the Fifth District concluded that "maliciously" in section 836.05, Florida Statutes (2009), requires proof that the defendant acted with ill will, hatred, spite, or an evil intent. *Id.* at 1010. We agree with the Third District, and therefore approve its decision in *Tomlinson* and disapprove the Fifth District's decision in *Calamia.*[1]

**I**

**A**

In April 2015, Kevin Tomlinson filed a complaint with the Miami Association of Realtors (MAR) alleging that two brokers, Jill Hertzberg and Jill Eber, known in the market as "the Jills," were preventing other brokers from courting their clients by manipulating data in a listing service that MAR operated. In their response to the complaint, the Jills took responsibility for altering the data. Nonetheless, the grievance process continued. In July, Tomlinson contacted Hertzberg and asked to meet. At the meeting,

---

1. We have jurisdiction. *See* art. V, § 3(b)(3), Fla. Const.

Tomlinson told Hertzberg that he could "make [the MAR complaint] go away," but that Hertzberg and Eber each had to pay Tomlinson $250,000 for him to do so. Otherwise, Tomlinson was "going to ruin [Hertzberg's] career" and "ruin the Jills" by, among other things, "call[ing] the Wall Street Journal" and convincing the Florida Department of Business and Professional Regulation to take away the Jills' real estate licenses. Tomlinson made similar threats on a phone call with Eber while he was in Hertzberg's presence. On the way out of that meeting, Tomlinson lowered his total asking price to $400,000.

In the following days, Tomlinson continued to threaten the Jills. They eventually went to the police, who counseled Hertzberg to arrange recorded calls with Tomlinson. During these recorded calls, Tomlinson asked Hertzberg to contact his attorney to discuss a settlement so that he could stop the complaint he filed from going before MAR. He told her that her reputation was at risk, and that he did not want her "beautiful career to be marred." He also mentioned that other brokers were interested in filing similar complaints, but that he had no desire to "corral all these people who want to bring down the Jills."

On August 5, on a recorded line, Hertzberg told Tomlinson that they would pay him the asking price, $400,000. The next day, Tomlinson arrived at Hertzberg's home, but now he threatened a class action suit, which would "end[] [Hertzberg's] career." For Tomlinson to stop the suit from proceeding, he now needed $800,000 total, and refused a $400,000 check tendered by Hertzberg.

After that meeting, Tomlinson emailed Hertzberg and members of MAR. He wrote that he had reached a tentative settlement with the Jills and requested an expeditious close to their grievance case. But the next day, Tomlinson again threatened a class action and swore off any potential settlement, sending another email that asked MAR to "proceed with the grievance."

The police subsequently arrested Tomlinson and the State charged him with two counts of extortion under section 836.05.

**B**

At the time of Tomlinson's arrest, section 836.05 provided:

Whoever, either verbally or by a written or printed communication, *maliciously* threatens to accuse another of any crime or offense, or by such communication *maliciously* threatens an injury to the person, property or reputation of another, or *maliciously* threatens to expose

- 4 -

another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

§ 836.05, Fla. Stat. (2015) (emphasis added).[2]

The word "maliciously" is not defined in section 836.05 or chapter 836. The standard jury instruction acknowledges that Florida's district courts of appeal have adopted different definitions of the word. *See* Fla. Std. Jury Instr. (Crim.) 8.23. One district court has read the statute to require proof of ill will, hatred, spite, or an evil intent (what some courts have called "actual malice"). *See Calamia*, 125 So. 3d at 1010. And other district courts have read the statute to require proof that the threat was made intentionally and without any lawful justification (or "legal malice"). *See Dudley v. State*, 634 So. 2d 1093, 1094 (Fla. 2d DCA 1994); *Alonso v. State*, 447 So. 2d 1029, 1030 (Fla. 4th DCA 1984); *see also Sanchez-*

---

2. With a few changes immaterial to this case, this provision is now codified as section 836.05(1). *See* ch. 2023-33, § 11, Laws of Fla.

*Torres v. State*, 322 So. 3d 15, 23 (Fla. 2020) (noting, in dicta, that "Florida courts have held that 'maliciously' means 'intentionally and without any lawful justification' ") (quoting *O'Flaherty-Lewis v. State*, 230 So. 3d 15, 18 (Fla. 4th DCA 2017)). The standard jury instruction thus gives trial courts the option to instruct on either definition. *See* Fla. Std. Jury Instr. (Crim.) 8.23.

Over Tomlinson's request that the jury be instructed on actual malice, the trial court instructed the jury on legal malice, specifically that "maliciously" meant "intentionally and without any lawful justification." The jury found Tomlinson guilty on both counts of extortion.

On appeal to the Third District, Tomlinson argued that the trial court erred by denying his request to instruct the jury on actual malice. The Third District disagreed, finding that "[t]he extortionist need not hate" the complainant, and " '[t]aking the text of section 836.05 as a whole, and considering its context and the discernable purposes of the legislature,' . . . the statutory term 'maliciously' means legal malice." *Tomlinson*, 322 So. 3d at 215 (first quoting *Alonso*, 447 So. 2d at 1030; and then *Seese v. State*, 955 So. 2d 1145, 1149 (Fla. 4th DCA 2007)).

In reaching this holding, the Third District "reject[ed] the rationale employed by [the Fifth District] in *Calamia*." *Id.* In *Calamia*, the Fifth District concluded that this Court's decision in *Carricarte*, 384 So. 2d at 1263, established that actual malice is the proper standard, even though the Fifth District thought that "legal malice is the more appropriate definition." 125 So. 3d at 1010. *Carricarte* concerned a constitutional challenge to section 836.05, Florida Statutes (1977), based on vagueness and overbreadth. 384 So. 2d at 1262. We rejected this challenge, and in addressing the defendant's vagueness argument we explained that we had "repeatedly upheld the terms 'malice' and 'malicious' against a vagueness challenge." *Id.* at 1263. In so stating, we cited as one example *State v. Gaylord*, where we had defined "malice" in the aggravated child abuse context to mean "ill will, hatred, spite, an evil intent." 356 So. 2d 313, 314 (Fla. 1978).

In rejecting the Fifth District's analysis, the Third District in *Tomlinson* found that legal malice was the correct standard based on its interpretation of the statute and decisions from other district courts of appeal, which had continued to apply the legal malice standard even after the Fifth District in *Calamia* held that this

- 7 -

Court's decision in *Carricarte* required application of the actual malice standard. *See Tomlinson*, 322 So. 3d at 215. The Third District concluded that "the conduct the extortion statute intends to criminalize . . . is threatening an injury to the reputation of another with the intent to extort money or compel another to pay a sum of money against her will intentionally and without a lawful justification" and affirmed the trial court's use of the legal malice jury instruction. *Id.* at 216. In doing so, the Third District aligned itself with the Fourth District Court of Appeal's decision in *Alonso*, 447 So. 2d at 1030, and the Second District Court of Appeal's decision in *Dudley*, 634 So. 2d at 1094.

## II

We have exercised our discretionary jurisdiction to resolve the express and direct conflict as to what section 836.05 requires the State to prove with regard to malice.[3] Because "the merits of this

---

3. Focusing as it does on the historical and contextual clues about what "maliciously" means in the law of extortion, our decision does not address the meaning of "actual malice" as that term is used in *New York Times Co. v. Sullivan*, where the United States Supreme Court defined it in the context of defamation: a statement is made with "actual malice" in that context when it is made "with knowledge that it [is] false or with reckless disregard of whether it

case only concern statutory interpretation, our review is de novo."
*Alachua Cnty. v. Watson*, 333 So. 3d 162, 169 (Fla. 2022) (citing
*GTC, Inc. v. Edgar*, 967 So. 2d 781, 785 (Fla. 2007)).

**A**

When, in discerning what a statute requires, we encounter a
word with more than one meaning, we look for the original meaning
of the statutory text to keep us from overriding the bargain struck
in the Legislature and signed by the Governor, that is, the law that
governs us. *See New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539
(2019) ("After all, if judges could freely invest old statutory terms
with new meanings, we would risk amending legislation outside the
'single, finely wrought and exhaustively considered, procedure' the
Constitution commands.") (quoting *INS v. Chadha*, 462 U.S. 919,
951 (1983)). This task—to arrive at the terms of the bargain by
looking to the meaning ascribed to the words that embody the deal
at the time it was struck—keeps us from pouring new wine into old
wineskins, with predictable results. And when (as often happens) a

---

[is] false or not." 376 U.S. 254, 280 (1964); *see also Nodar v. Galbreath*, 462 So. 2d 803, 806 (Fla. 1984).

word had more than one accepted meaning at that time, we decide which one is the law by looking to the context in which it appears, and what history tells us about how it got there.

Here, the contextual clues bearing on the meaning of "maliciously" in section 836.05 affirm the Third District's insight that the term does not denote a hatred of the complainant. *Tomlinson,* 322 So. 3d at 215. Adjacent language requires the State to prove "intent . . . to extort money or any pecuniary advantage" or to make a complainant or another person "do any act or refrain from doing any act against his or her will." § 836.05. That provides a clue about what the word "maliciously" does in the statute: it directs the reader to the meaning of the word that fits most readily with an intent to take pecuniary advantage of, and not necessarily to hate, the complainant—that is, to act "intentionally and without a lawful justification." *Tomlinson,* 322 So. 3d at 216.

And then there is the history. The legislative bargain that eventually found its way into section 836.05 of our statutes was first struck in 1868. Back then, the law said:

> Whoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication

- 10 -

maliciously threatens an injury to the person or property of another, with intent thereby to extort money or any pecuniary advantage whatever, or with intent to compel the person so threatened, or any other person, to do any act against his or her will, shall be punished by imprisonment in the State penitentiary not exceeding ten years.

Ch. 1637, subc. 3, § 42, Laws of Fla. (1868).[4]  At the time,

"maliciously" had developed a settled legal meaning at English

common law,[5] of which we are mindful in interpreting the statute.

---

4.  The Legislative Council of the Territory of Florida enacted a similar statute in 1832.  Among other things, that statute provided that it was a crime to "knowingly send or deliver any letter or writing, threatening to accuse another person of a crime with intent to extort money."  An Act relating to Crimes and Misdemeanors, § 34, Acts of the Legislative Council of the Territory of Florida, Tenth Session (1832).  It is not unlike the English statutes detailed below. *See infra* note 12.

5.  Early in the eighteenth century, Lord Chief Justice Holt stated that hatred and malice are "distinct passions of the mind." *R. v. Mawgridge* (1707) 84 Eng. Rep. 1107, 1110.  Malice "is a design formed of doing mischief to another," so that one who "designs and useth the means to do ill is malicious." *Id.* at 1111. *See also Jones v. Givin* (1713) 93 Eng. Rep. 300, 302 ("In short malice and maliciously I take to be terms of law which in the legal sense always exclude a just cause.").  Two opinions from around a century later, influential in early American law, also distinguished between hatred and malice in the legal sense. *See R. v. Harvey* (1823) 107 Eng. Rep. 379, 383 (Best, J.) ("The legal import of [malice] differs from its acceptation in common conversation.  It is not, as in ordinary speech, only an expression of hatred or ill-will to an individual; but means any wicked or mischievous intention of the mind.  Thus, in the crime of murder . . . it is neither

- 11 -

*See NLRB v. Amax Coal Co.*, 453 U.S. 322, 329 (1981) ("Where

Congress uses terms that have accumulated settled meaning

under . . . the common law, a court must infer, unless the statute

otherwise dictates, that Congress means to incorporate the

established meaning of these terms.").[6]

This Court, citing English authorities, provided its definition of

the term one year before the extortion statute was first enacted,

---

necessary . . . to shew that the prisoner had any enmity to the deceased, nor would proof of absence of ill-will furnish the accused with any defence, when it is proved that the act of killing was intentional, and done without any justifiable or excusable cause."); *Bromage v. Prosser* (1825) 107 Eng. Rep. 1051, 1054 ("Malice in common acceptation means ill will against a person, but in its legal sense it means a wrongful act, done intentionally, without just cause or excuse."). One common law scholar, writing about twenty years after the enactment of our first law of extortion, concluded that "malice" "seldom if ever bears its natural sense (except it may be in some of the rules as to libel)." 2 James Fitzjames Stephen, *A History of the Criminal Law of England* 120 (London, MacMillan & Co. 1883).

6. Other courts charged with interpreting "malice" and "maliciously" in criminal statutes have also turned to the common law meaning of these terms for guidance. *See, e.g., United States v. Kelly*, 676 F.3d 912, 917-18 (9th Cir. 2012). Given this established legal meaning, a related canon of construction, which provides that "technical legal words . . . are deemed to have been statutorily used as they are legally defined," *Ocasio v. Bureau of Crimes Comp. Div. of Workers' Comp.*, 408 So. 2d 751, 752 (Fla. 3d DCA 1982), also supports the result reached by the Third District.

writing that a "wrongful act done intentionally without just cause or excuse, is said to be done maliciously." *Holland v. State*, 12 Fla. 117, 125 (1867).

Dictionaries from the era, which we often consult when looking for original meaning, *Conage v. United States*, 346 So. 3d 594, 599 (Fla. 2022), mainly support this Court's interpretation in *Holland*.[7]  Courts and scholars on this side of the Atlantic similarly

---

7.  One lay dictionary defines "malice" in law as "[a]ny wicked or mischievous intention of the mind; a depraved inclination to mischief; intention to do an act which is wrongful, without just cause or excuse; a wanton disregard of the rights or safety of others; willfulness." *Webster's An American Dictionary of the English Language* 804 (1865).  In one law dictionary, which references English cases, such as *Bromage*, "malice" in criminal law is defined as "doing a wrongful act intentionally without just cause or excuse," or as a "conscious violation of the law, to the prejudice of another."  2 John Bouvier, *A Law Dictionary* 91 (12th ed. 1868).  However, there is some contrary authority.  Another law dictionary defines "malice" in criminal law and general practice in part as "[w]ickedness of purpose; a spiteful or malevolent design against another; a settled purpose to injure or destroy another," which supports Tomlinson's reading.  2 Alexander M. Burrill, *A Law Dictionary and Glossary* 174 (2d ed. 1870).  But that same dictionary, also referencing some English cases, including *Bromage*, goes on to also define the term as "[w]ilfulness. . . . The doing any act without a just cause. . . .  Malice, in the legal acceptation of the word, is not confined to personal spite against individuals, but consists in a conscious violation of the law, to the prejudice of another. . . .  Malice, in its legal sense, means a wrongful act done intentionally, without just cause or excuse."  *Id.* at 175.

- 13 -

interpreted "maliciously" in many discussions of criminal intent.[8]

Of particular importance here, three state supreme courts refused to require proof of hatred or ill will when interpreting "maliciously" in extortion statutes with language like Florida's. *See Commonwealth v. Goodwin*, 122 Mass. 19, 35-36 (1877); *State v. Compton*, 46 N.W. 535, 536-37 (Wis. 1890); *People v. Whittemore*, 61 N.W. 13, 15 (Mich. 1894).[9]

---

8. One court wrote that there is a "plain and obvious distinction between the legal and the popular meaning of the term 'malice.'" *Commonwealth v. Snelling*, 32 Mass. 337, 340 (1834). In the legal sense, "any act done wilfully and purposely to the prejudice and injury of another, which is unlawful, is, as against that person, malicious," and it is unnecessary to show "that the party be actuated by a feeling of hatred or ill-will towards the individual." *Id.*; *see also, e.g., United States v. Taylor*, 28 F. Cas. 31, 31-32 (C.C.D. Mass. 1837); *State v. Doig*, 31 S.C.L. 179, 182 (S.C. App. L. 1845); *State v. Hambleton*, 22 Mo. 452, 456-57 (1856); *State v. Decklotts*, 19 Iowa 447, 448-49 (1866); *United States v. Harriman*, 26 F. Cas. 172, 173 (E.D. Va. 1876); 1 Joel Prentiss Bishop, *New Commentaries on the Criminal Law* § 429, at 261-62 (Chicago, T.H. Flood & Co. 8th ed. 1892); 1 Emlin McClain, *A Treatise on the Criminal Law as Now Administered in the United States* § 121 (Chicago, Callaghan & Co. 1897).

9. In *Wallace v. State*, 26 So. 713 (Fla. 1899), this Court for the first time reviewed a prosecution under the extortion statute. The jury instructions in that case provided that if the jury believed from the evidence, beyond a reasonable doubt, that the defendant, "in his capacity as city marshal, acting with [the mayor], caused [the complainant] to come before them on Sunday, when no court was being held, and threatened [the complainant] with prosecution

- 14 -

We cannot say this nineteenth-century understanding of "maliciously" in the context of extortion did not even then coexist with a sense of the word denoting hatred or ill will, as there are of course significant nineteenth-century illustrations of that usage.[10] Indeed, there were legal contexts in which the meaning advocated by Tomlinson was sometimes used—though not in the context of

---

for keeping a bawdy house, and at the time had no good reason to believe that he was acting legally, and that the threat was made with intent on defendant's part to extort money from [the complainant]" then it should find the defendant guilty as charged. *Id.* at 723. If the use of "maliciously" did in fact require a demonstration that the defendant acted with ill will or hatred toward the complainant, then this instruction would have been inadequate. But this Court found the instruction "seem[ed] to have fully covered the question as to the legality of defendant's acts, and his belief in their legality." *Id.*

10. "With malice toward none; with charity for all; with firmness in the right, as God gives us to see the right, let us strive on to the finish the work we are in; to bind up the nation's wounds; to care for him who shall have borne the battle, and for his widow, and his orphan—to do all which may achieve and cherish a just, and a lasting peace, among ourselves, and with all nations." Abraham Lincoln, Second Inaugural Address (Mar. 4, 1865), *reprinted in Abraham Lincoln: A Documentary Portrait Through His Speeches and Writings* 278-79 (Don E. Fehrenbacher ed., Stanford University Press 1977) (1964); *see also* Letter from Abraham Lincoln to James H. Hackett (Nov. 2, 1863), *id.* at 237-38 ("I have endured a great deal of ridicule without much malice; and have received a great deal of kindness, not quite free from ridicule. I am used to it.").

extortion. In *Lovett v. State*, for instance, this Court approved a jury instruction in a murder case providing in part that an act is "maliciously done when it is done on purpose, and with evil intent." 11 So. 550, 552 (Fla. 1892). Yet the instruction also recognized that "malice," even in that context, "is never understood to denote general malevolence or unkindness of heart, or enmity towards a particular individual, but it signifies, rather, the intent from which flows any unlawful and injurious act, committed without legal justification." *Id.*

And in prosecutions for criminal mischief,[11] some courts interpreted "maliciously" to mean ill will or enmity, or to describe

---

11. Malicious mischief offenses criminalized damage to private property motivated either by a "spirit of wanton cruelty, or black and diabolical revenge." 4 William Blackstone, *Commentaries on the Laws of England* *243. English law provided that a sentence of death awaited any defendant convicted of "unlawfully and maliciously" killing, maiming, or wounding cattle. 9 Geo. I, c. 22, § 1 (1722). Some English courts determined that the government had to prove that the defendant acted out of hatred or ill will toward the animal's owner under this statute. *See* 2 Edward H. East, *A Treatise of the Pleas of the Crown* 1072-73 (Philadelphia, P. Byrne 1806). And this reasoning was extended to other forms of property damage. *See Curtis v. The Hundred of Godley* (1824) 107 Eng. Rep. 726, 727-28. But this requirement was later removed by statute, and subsequent cases provided that proof of hatred or ill will was no longer required. *See State v. Boies*, 74 P. 630, 631-33 (Kan. 1903) (explaining this change). A review of English criminal law

intentions of cruelty, hostility, or vengeance toward the complainant.  *See, e.g., Commonwealth v. Williams*, 110 Mass. 401, 402-03 (1872); *Johnson v. State*, 61 Ala. 9, 11-12 (1878); *State v. Johnson*, 54 P. 502, 502-03 (Wyo. 1898).  In a roundabout way, these usages of "maliciously" to denote ill will or hatred wind up supporting the Court's conclusion today: English common law provides some support for that meaning of the word in the context of malicious mischief, but points to another meaning in the context of other crimes, including extortion.[12]

---

provided that legal malice came to be the standard even in this context.  *See* Stephen, *supra* note 5 ("In reference to malicious mischief, and other offences . . . 'malice' means nothing more than doing the act intentionally without lawful justification or excuse.").

12.  English statutes similar to section 836.05 were not understood to require proof of a defendant's ill will or hatred toward the complainant.  *See* Douglas H. Ginsburg & Paul Shechtman, *Blackmail: An Economic Analysis of the Law*, 141 U. Pa. L. Rev. 1849, 1851-52 (1993); W.H.D. Winder, *The Development of Blackmail*, 5 Mod. L. Rev. 21 (1941); East, *supra* note 11 at 1106-26.  Such statutes include one that made it a crime to "knowingly send or deliver any letter or writing . . . threatning to accuse any person of any crime punishable by law with death, transportation, pillory, or any other infamous punishment, with a view or intent to extort or gain money . . . from the person or persons so threatened to be accused," 30 Geo. II, c. 24, § 1 (1757), and another provided that it was a crime to, among other things, "maliciously threaten to accuse any other person of any crime punishable by law with death, transportation or pillory, or of any infamous crime, with a view or

Further, two courts that adopted this reading of "maliciously" in the malicious mischief context still recognized that the "wilful doing of an unlawful act without excuse . . . is ordinarily sufficient to establish criminal malice." *Williams*, 110 Mass. at 403; *see also Johnson*, 54 P. at 502-03. And one court from this era explicitly rejected the argument that these cases should inform its interpretation of "maliciously" in an extortion statute. *See Goodwin*, 122 Mass. at 35-36.

The Legislature has fiddled with the statute a few times since 1868, but its revisions do not suggest that it altered which meaning of "maliciously" applied in the context of extortion.[13] To the

intent to extort or gain money . . . from the person so threatened," 4 Geo. IV, c. 54, § 5 (1823). The crime of extortion at common law similarly did not require proof of a defendant's ill will or hatred toward the complainant. *See La Tour v. Stone*, 190 So. 704, 708 (Fla. 1939) ("Extortion at common law is the unlawful taking by any officer, by color of his office, of any money or thing of value that is not due him, or more than is due, or before it is due.").

13. The Legislature has reenacted or amended the statute eight times. *See* Rev. St. 1892, § 2420; Gen. St. 1906, § 3261; Rev. Gen. St. 1920, § 5092; Comp. Gen. Laws 1927, § 7194; ch. 57-254, § 1, Laws of Fla.; ch. 71-136, § 991, Laws of Fla.; ch. 97-102, § 1307, Laws of Fla; ch. 2023-33 § 11, Laws of Fla. The most substantial change came in 1957, when the Legislature criminalized

contrary, we find in the continuity more support for our decision today. *See Williams v. State*, 314 So. 3d 775, 785 (Fla. 1st DCA 2021) ("Because the ancient terms were carried forward *in toto* from the original statute through to the new statute, there is no indication that the Legislature intended those terms to take on any then-newer meaning from 1957 or any meaning that differed from how those terms originally were understood."); *Am. Cas. Co. of Reading, Pennsylvania v. Nordic Leasing, Inc.*, 42 F.3d 725, 732 n.7 (2d Cir. 1994) ("Where sections of a statute have been amended but certain provisions have been left unchanged, we must generally assume that the legislature intended to leave the untouched provisions' original meaning intact."); *see also* 1A Norman J. Singer & Shambie Singer, *Sutherland Statutes and Statutory Construction*, § 22:33 (7th ed. Nov. 2022 Update). And Tomlinson has not pointed us to any evidence of a shift in the meaning of "maliciously" in the context of our extortion statute from 1868 to the present that might cause us to think that the Legislature chose a different meaning of

---

malicious threats to the reputation—not just the person or property—of another. *See* ch. 57-254, § 1, Laws of Fla.

- 19 -

"maliciously" at some point since section 836.05's original enactment.[14]

In all, both context and history convince us that the Legislature, in striking the bargain that it did in 1868, used "maliciously" to mean "intentionally and without any lawful justification."

**B**

Our decision in *Carricarte* does not require a different result. In that case, the defendant challenged the constitutionality of

---

14.  The most recent edition of *Black's Law Dictionary* says "malice" means "[t]he intent, without justification or excuse, to commit a wrongful act." *Malice, Black's Law Dictionary* (11th ed. 2019); *see also Malicious, Black's Law Dictionary* (11th ed. 2019) (defining malicious as "[s]ubstantially certain to cause injury," or "[w]ithout just cause or excuse"). *Merriam-Webster's Collegiate Dictionary* defines "malice" as "intent to commit an unlawful act or cause harm without legal justification or excuse." *Malice, Merriam-Webster's Collegiate Dictionary* (11th ed. 2003). The word's alternate meaning has also survived more or less unchanged. For example, *Black's Law Dictionary* defines "maliciously" as "[i]n a spirit of ill will" or "[w]ith malice aforethought." *Maliciously, Black's Law Dictionary* (11th ed. 2019). The same source elaborates that malice can mean "[i]ll will; wickedness of heart," although it notes that "[t]his sense is most typical in *nonlegal contexts.*" *Malice, Black's Law Dictionary* (11th ed. 2019) (emphasis added). And *Merriam-Webster's Collegiate Dictionary* alternatively defines "malice" as a "desire to cause pain, injury, or distress to another." *Malice, Merriam-Webster's Collegiate Dictionary* (11th ed. 2003).

section 836.05, arguing that it was impermissibly vague and overbroad. *Carricarte*, 384 So. 2d at 1262. We found that this challenge lacked merit, and in addressing the defendant's vagueness argument stated that "[t]his Court has repeatedly upheld the terms 'malice' and 'malicious' against a vagueness challenge." *Id.* at 1263.[15]

We cited *Gaylord* in support of this proposition, a case in which we said, without much analysis, that "[m]alice means ill will, hatred, spite, an evil intent" before rejecting a vagueness and overbreadth challenge to section 827.03, Florida Statutes (1975), which criminalized aggravated child abuse. 356 So. 2d at 314.[16] But our mere citation of *Gaylord* in rejecting a vagueness challenge

---

15. Tomlinson raises similar constitutional claims here and argues that his reading of "maliciously" would save section 836.05 from constitutional concerns. But he failed to make these arguments at the trial court level, which means he has not preserved them for our review. *See Steinhorst v. State*, 412 So. 2d 332, 338 (Fla. 1982) ("[I]n order for an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection, exception, or motion below.").

16. In 2003, the Legislature rejected *Gaylord* and amended section 827.03 to define "maliciously" as "wrongfully, intentionally, and without legal justification or excuse." Ch. 2003-130, § 1, Laws of Fla. (amending § 827.03, Fla. Stat. (2002)).

does not constitute a holding that "maliciously," as used in section 836.05, means "with ill will, hatred, spite, or an evil intent." *See Lewis v. State*, 34 So. 3d 183, 186 (Fla. 1st DCA 2010) ("When a court makes a pronouncement of law that is ultimately immaterial to the outcome of the case, it cannot be said to be part of the holding in the case."); Michael Abramowicz & Maxwell Stearns, *Defining Dicta*, 57 Stan. L. Rev. 953, 1065 (2005) ("A holding consists of those propositions along the chosen decisional path or paths of reasoning that (1) are actually decided, (2) are based upon the facts of the case, and (3) lead to the judgment. If not a holding, a proposition stated in a case counts as dicta.").

In *Carricarte*, we were not called upon, and therefore did not answer, the question posed to us today: what the State must prove as to the defendant's malice to obtain a conviction under section 836.05. That question is answered conclusively by the words of the statute in their historical context.[17]

---

17. Tomlinson argues that we should apply the rule of lenity to interpret "maliciously" in his favor, but that is a tool we pull from the box only when others will not do the job. *See Paul v. State*, 129 So. 3d 1058, 1064 (Fla. 2013) (recognizing that the rule of lenity "only applies if the statute remains ambiguous after consulting traditional canons of statutory construction"); *see also Conage*,

## III

The trial court and the Third District Court of Appeal each correctly decided that "maliciously," as used in section 836.05, means "intentionally and without any lawful justification."  That is what the word has meant for the long history of its use in our law of extortion, even though it has, also for a long time, meant other things when used elsewhere.  We therefore approve the Third District's decision in *Tomlinson* and disapprove the Fifth District's decision in *Calamia.*

It is so ordered.

MUÑIZ, C.J., and CANADY, GROSSHANS, and FRANCIS, JJ., concur.
LABARGA, J., concurs in result.
SASSO, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal
    Direct Conflict of Decisions

    Third District – Case No. 3D18-1982

    (Miami-Dade County)

---

346 So. 3d at 598 ("[T]he rule of lenity, by [its] own terms come[s] into play only after other interpretive tools have been exhausted.").

John E. Bergendahl of Law Offices of John E. Bergendahl, Miami, Florida; and Daniel Tibbitt of Daniel J. Tibbitt, P.A., North Miami, Florida,

    for Petitioner

Ashley Moody, Attorney General, Tallahassee, Florida, Michael W. Mervine, Bureau Chief, Miami, Florida, and Kseniya Smychkouskaya, Assistant Attorney General, Miami, Florida,

    for Respondent